**Affirmed as Modified and Opinion filed May 7, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00900-CV

## STANWYN JAY CARTER, Appellant

### V.

## ZB, NATIONAL ASSOCIATION D/B/A AMEGY BANK, Appellee

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-56775**

## O P I N I O N

Appellant Stanwyn Jay Carter, *pro se*, appeals the trial court's order granting appellee ZB, National Association d/b/a Amegy Bank ("Amegy Bank") summary judgment on its claim for declaratory relief that Carter cannot force Amegy Bank to arbitrate the dispute in an arbitration that Carter had commenced. We modify the trial court's judgment to delete two declarations and affirm the judgment as modified.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Contours Community Development Corporation executed a promissory note dated September 1, 2010, in the principal amount of $544,000 (the "Note") payable to Amegy Bank. Carter signed the Note as Executive Director of Contours. Contours and Amegy Bank executed a "First Modification and Extension to Note and Deed of Trust," dated December 31, 2010 ("First Modification"). Carter signed the First Modification as Executive Director of Contours.

Paragraph 43 of the Note and paragraph 13 of the First Modification address dispute resolution and are substantially similar in all material respects. Each paragraph has a section entitled "JURY TRIAL WAIVER," and a section entitled "ARBITRATION." In the first section, Contours and Amegy Bank waive their right to a jury trial in connection with a claim, dispute, or controversy that arises between them with respect to the Note, related agreements, or any other agreement or business relationship between them, whether or not related to the subject matter of the Note (hereinafter a "Dispute"). In the first paragraph, Contours and Amegy Bank agree that any Dispute will be resolved "BY A JUDGE SITTING WITHOUT A JURY." Contours and Amegy Bank agree that if a court determines that the jury-trial-waiver provision is not enforceable, then before trial of a Dispute but not later than thirty days after entry of the order determining the provision to be unenforceable, either party may move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration (an "Arbitration Order.").

In the second paragraph regarding arbitration, Contours and Amegy Bank agree that if a Dispute arises and only if a jury-trial waiver is not permitted by applicable law or by a court ruling, then either party may require that the Dispute

2

be resolved by binding arbitration before a single arbitrator at the request of any party.

Carter, *pro se*, filed a demand for arbitration with JAMS, seeking to arbitrate claims against Amegy Bank under the arbitration provision in Paragraph 43 of the Note. When JAMS refused to dismiss the arbitration, Amegy Bank filed suit in the trial court below seeking declaratory relief, including a declaration that Carter cannot force Amegy Bank to arbitrate, and seeking to stay the arbitration proceedings. Instead of filing an answer, Carter filed a motion to compel arbitration.

Following a temporary restraining order and a temporary injunction enjoining Carter from continuing to prosecute the arbitration, Amegy Bank filed a motion for traditional summary judgment. In the motion, Amegy Bank sought various declarations as a matter of law, including a declaration that Carter cannot force Amegy Bank to arbitrate the dispute in the commenced JAMS arbitration styled *Carter, Stanwyn Jay v. Amegy Bank National Association* (hereinafter the "Carter Dispute"). Amegy Bank maintains that Carter improperly commenced arbitration predicated on an arbitration provision that does not authorize arbitration at this juncture. Amegy Bank attached to its motion authenticated copies of the Note and the First Modification. Carter filed a summary-judgment response, asserting various points and arguing that he raised genuine issues of material fact.

The trial court granted Amegy Bank's summary-judgment motion, making seven declarations as a matter of law. The trial court later rendered a final judgment ordering that the Carter Dispute remain stayed. In the final judgment the trial court reiterated the same seven declarations:

1. Pursuant to Paragraph 43 of the Promissory Note and Paragraph 13 of the First Modification and Extension to Note and Deed of Trust ("First Modification"), only a court may determine the validity, enforceability, meaning, and scope of the Promissory Note and First Modification's arbitration provisions.

2. Pursuant to Paragraph 43 of the Promissory Note and Paragraph 13 of the First Modification, arbitration cannot be commenced unless a court determines that the jury trial waiver is not enforceable.

3. Pursuant to Paragraph 43 of the Promissory Note and Paragraph 13 of the First Modification, arbitration cannot be commenced until there is an Arbitration Order as defined in the Promissory Note and First Modification.

4. Pursuant to Paragraph 43 of the Promissory Note and Paragraph 13 of the First Modification, an Arbitration Order cannot issue unless a court determines that the jury trial waiver is not enforceable.

5. An Arbitration Order has not issued.

6. There has been no determination that the jury trial waiver is unenforceable.

7. Defendant Stanwyn Jay Carter cannot force ZB, National Association d/b/a Amegy Bank to arbitrate the dispute in the commenced JAMS arbitration styled Carter, Stanwyn Jay vs. Amegy Bank National Association.

On appeal Carter argues that the trial court reversibly erred in granting summary judgment.

## II. Analysis

Liberally construing Carter's brief, we interpret Carter to assert the following points:

(1) The agreement does not require an arbitration order to issue before an arbitration may be initiated under the arbitration clause.

(2) Under their plain texts, the agreements provide for arbitration if

4

a jury-trial waiver is not permitted by applicable law or by court ruling, and thus there is no requirement that a court determine the jury-trial waiver to be unenforceable.

(3)   The jury-trial-waiver provision applies if permitted by applicable law or by a court ruling, but no summary-judgment evidence proves either proposition.

(4)   Even though Carter did not sign the Note or First Modification in his individual capacity, Carter may arbitrate the Carter Dispute because he is an obligated party to an arbitration agreement that encompasses the Carter Dispute and because Amegy Bank refuses to arbitrate.

(5)   The trial court erred in declaring that Carter cannot force Amegy Bank to arbitrate the Carter Dispute because the arbitration clause provides that "Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum . . . as selected by the initiating party."

(6)   The trial court's first declaration is contrary to precedent under which attacks on the validity of the contract, as opposed to attacks on the validity of the arbitration clause, are to be resolved by the arbitrator in the first instance.

(7)   Under the contracts, either the jury-trial waiver is enforceable or the arbitration clause is enforceable, and because the arbitration clause is valid, irrevocable and enforceable, the jury-trial waiver necessarily is unenforceable.

## A.   Standard of review

We review declaratory judgments decided by summary judgment under the same standards that govern summary judgments generally. *See* Tex. Civ. Prac. & Rem. Code § 37.010 (West, Westlaw through 2017 1st C.S.); *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 472 S.W.3d 325, 332 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review the trial court's grant of a summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, if the movant's motion and

5

summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

In this case, the trial court was asked to render a declaratory judgment based on the Note and the First Modification, instruments subject to the general rules of contract construction. *See Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In construing a contract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id*. But, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous,

and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We cannot rewrite the contract or add to its language under the guise of interpretation. *See American Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 162. Rather, we must enforce the contract as written. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).

## B. Law on arbitration

A party seeking to force another party to arbitrate certain claims must establish that (1) a valid arbitration agreement exists[1] and (2) the claims at issue are within the scope of the agreement. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 780–81 (Tex. 2006) (orig. proceeding); *In re Igloo Prods. Corp.*, 238 S.W.3d 574, 577 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]). If the party seeking arbitration proves a valid arbitration agreement, any doubts as to whether the claims fall within the scope of the arbitration clause must be resolved in favor of arbitration. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the claims at issue. *See Prudential Sec. Inc.*, 909 S.W.2d at 899; *Osornia*, 367 S.W.3d at 712.

We presume for the purposes of our analysis that the arbitration clauses in the Note and First Modification are broad, making the presumption of arbitrability particularly applicable. *See Osornia*, 367 S.W.3d at 712. In such instances, absent

---

[1] If all relevant parties did not sign the contract containing the arbitration agreement, this first prong may include issues as to whether a non-signatory is bound by or may enforce the arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011). Though Carter, in his individual capacity, is a non-signatory, we presume, without deciding, that Carter may enforce arbitration of the Carter Dispute under the arbitration provisions of the Note and First Modification.

any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail, and Amegy Bank has the burden of showing that the claims fall outside the scope of the arbitration clauses. *See id.* Nonetheless, the strong policy favoring arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow the court to modify the unambiguous meaning of the arbitration clause. *See id.*

**C.     Applicable language from the Note and the First Modification**

The First Modification provides in pertinent part as follows:

> 13.     <u>Dispute Resolution</u>.     This paragraph contains a jury waiver, arbitration clause[,] and a class action waiver. This paragraph should be carefully read.
>
> (a)     <u>JURY TRIAL WAIVER</u>.     AS PERMITTED BY APPLICABLE LAW, EACH PARTY WAIVES ITS RESPECTIVE RIGHTS TO A TRIAL BEFORE A JURY IN CONNECTION WITH ANY DISPUTE (HEREINAFTER DEFINED), AND **DISPUTES SHALL BE RESOLVED BY A JUDGE SITTING WITHOUT A JURY**.[2] IF A COURT DETERMINES THAT THIS PROVISION IS NOT ENFORCEABLE FOR ANY REASON, THEN AT ANY TIME PRIOR TO TRIAL OF THE DISPUTE, BUT NOT LATER THAN THIRTY (30) DAYS AFTER ENTRY OF THE ORDER DETERMINING THIS PROVISION IS UNENFORCEABLE, EITHER PARTY SHALL BE ENTITLED TO MOVE THE COURT FOR AN ORDER COMPELLING ARBITRATION AND STAYING OR DISMISSING SUCH LITIGATION PENDING ARBITRATION ("ARBITRATION ORDER").
>
> (b) <u>ARBITRATION</u>.  If a claim, dispute, or controversy arises between the parties hereto with respect to [the First Modification] or the Note, related agreements, or any other agreement or business relationship between the parties hereto whether or not related to the subject matter of [the First Modification] or the Note (all of the foregoing, a "Dispute"), **and only if a jury trial waiver is not**

---

[2] boldface added

**permitted by applicable law or ruling by a court,**[3] either party may require that the Dispute be resolved by binding arbitration before a single arbitrator at the request of any party. By agreeing to arbitrate a Dispute, each party gives up any right such party may have to a jury trial, as well as other rights such party would have in court that are not available or are more limited in arbitration, such as the rights to discovery and to appeal.

Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum ("Administrator") as selected by the Initiating party. If the parties agree, arbitration may be commenced by appointment of a licensed attorney who is selected by the parties and who agrees to conduct the arbitration without an Administrator. Disputes include matters [stating several matters]. However, Disputes do not include the validity, enforceability, meaning, or scope of this arbitration provision and such matters may be determined only by a court. If a third party is a party to a Dispute, each party will consent to including the third party in the arbitration proceeding for resolving the Dispute with the third party. Venue for the arbitration proceeding shall be at a location determined by mutual agreement of the parties or, if no agreement, in the city and state where lender or bank is headquartered.

After entry of an Arbitration Order, the non-moving party shall commence arbitration. The moving party shall, at its discretion, also be entitled to commence arbitration but is under no obligation to do so, and the moving party shall not in any way be adversely prejudiced by electing not to commence arbitration. The arbitrator . . . [listing tasks that arbitrator will perform]. Filing of a petition for arbitration shall not prevent any party from [listing various actions a party may take]. The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction except that, if the arbitration award exceeds $4,000,000.00, any party shall be entitled to a de novo appeal of the award before a panel of three arbitrators. To allow for such appeal, [setting forth provisions regarding the procedure for a party to

---

[3] emphasis added

9

exercise its right to appeal an arbitration award in excess of $4,000,000.00 to a panel of three arbitrators].

Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. This arbitration provision shall survive any termination, amendment, or expiration of [the First Modification] and the Note. If the terms of this provision vary from the Administrator's rules, this arbitration provision shall control.

The correlative parts of the Note are substantially similar in all material respects to the above-quoted text. Both the Note and the First Modification contain a provision stating that the instrument shall be governed by and construed in accordance with Texas law.

**D.    Trial court's determination that no party can start an arbitration unless a court has determined that the jury-trial waiver is not enforceable**

In its second declaration, the trial court ruled that under Paragraph 43 of the Note and Paragraph 13 of the First Modification, "arbitration cannot be commenced unless a court determines that the jury trial waiver is not enforceable." On appeal, Carter asserts that under the plain text of the Note and First Modification, there is no such requirement. Amegy Bank asserts that Carter waived this argument by not presenting it in his summary-judgment response in the trial court. Even if Carter did not raise this argument in his summary-judgment response, the law does not require that he have done so because his challenge constitutes a complaint that Amegy Bank's summary-judgment evidence does not prove as a matter of law Amegy Bank's entitlement to summary judgment on a traditional ground. *See M.D. Anderson Hosp. & Tumor Institute v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). Thus, Carter still can raise this complaint. *See id*.

Under the unambiguous wording of each instrument, the parties agree to arbitrate any Dispute, but "only if a jury trial waiver is not permitted by applicable

law or ruling by a court." Thus, the arbitration agreement is triggered only if: (1) a jury-trial waiver is not permitted by applicable law, or (2) a court rules that a jury-trial waiver is not permitted. *See Morgan v. Bronze Queen Mngmt. Co., LLC*, 474 S.W.3d 701, 710 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (construing similar language). Though such a court order does trigger the arbitration clause, it is not the exclusive trigger. *See id*.

In the jury-trial-waiver paragraph, the parties agree that, if a court determines that the jury-trial waiver is not enforceable for any reason, then before trial and no later than thirty days after entry of the order, either party is entitled to ask the court for an order compelling arbitration and staying or dismissing the litigation pending arbitration. This language is consistent with the language in the arbitration provision, in which the parties agree that one of two situations in which their arbitration agreement is triggered is when a court rules that a jury-trial waiver is not permitted. Yet, neither in the jury-trial-waiver provision nor in the remainder of either instrument do the parties agree that such a court ruling is the only situation in which the parties agree to arbitrate a Dispute. *See id*.

Under the unambiguous language of the two instruments, the arbitration clause may be triggered without any court order if a jury-trial waiver is not permitted by applicable law. *See id*. Therefore, the trial court erred in declaring that under Paragraph 43 of the Note and Paragraph 13 of the First Modification, "arbitration cannot be commenced unless a court determines that the jury trial waiver is not enforceable." *See id*.; *Marzo Club, LLC*, 325 S.W.3d at 799–800.

### E. Trial court's determination that no party can start an arbitration until there is an order compelling arbitration

In its second declaration, the trial court ruled that under Paragraph 43 of the Note and Paragraph 13 of the First Modification, "arbitration cannot be

commenced until there is an Arbitration Order." On appeal, Carter asserts that under the plain text of the Note and First Modification, there is no such requirement. Amegy Bank asserts that Carter waived this argument by not presenting it in his summary-judgment response in the trial court. Even if Carter did not raise this argument in his summary-judgment response, the law does not require that he have done so because he is asserting that Amegy Bank's summary-judgment evidence does not prove as a matter of law Amegy Bank's entitlement to summary judgment on a traditional ground. *See M.D. Anderson Hosp. & Tumor Institute*, 28 S.W.3d at 23. Thus, Carter can raise this complaint for the first time on appeal. *See id*.

In the jury-trial-waiver provision, the parties agree that if a court determines that the jury-trial waiver is not enforceable for any reason then before trial and no later than thirty days after the order's entry, either party may ask the court for an order compelling arbitration and staying or dismissing the litigation pending arbitration. Under the clear text of each instrument, if a court determines that the jury-trial waiver is not enforceable, then within a certain time period either party may ask the court for an order compelling arbitration, but the parties do not make an Arbitration Order mandatory. Nothing in the Federal Arbitration Act or Texas Arbitration Act requires that parties get an order compelling arbitration, and unless the parties agree that an order compelling arbitration is a necessary prerequisite to arbitration, an arbitration may be conducted and an arbitration award may be rendered and enforced without any order compelling arbitration. *See Ewing v. Act-Catastrophe Texas, L.C.*, 375 S.W.3d 545, 550–51 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

The parties do not state in either instrument that an order compelling arbitration must be obtained before the parties may arbitrate a Dispute. On the

contrary, under the permissive language of the jury-trial-waiver section, either party may ask the court for an order compelling arbitration if a court determines that the jury-trial waiver is not enforceable, as long as the party does so before trial and within thirty days of the trial court's order determining that the jury-trial waiver is not enforceable. To construe the instruments as requiring a party to obtain an order compelling arbitration would conflict with the parties' agreement that "EITHER PARTY SHALL BE **ENTITLED** TO MOVE THE COURT FOR AN ORDER COMPELLING ARBITRATION."[4] Though the parties agree that "[a]fter entry of an Arbitration Order, the non-moving party shall commence arbitration," the parties do not stipulate that arbitration may be commenced only after an Arbitration Order.

Amegy Bank argues that construing the instruments as not requiring an Arbitration Order before a Dispute may be arbitrated would render superfluous the requirement that a party seek an order compelling arbitration within thirty days of the trial court's order determining that the jury-trial waiver is not enforceable. According to Amegy Bank, there would be no need for a thirty-day deadline to seek an order compelling arbitration if the parties could proceed to arbitrate a Dispute after the thirty-day deadline expired. We disagree.

A deadline for seeking an Arbitration Order after a court's order that the jury-trial waiver is not enforceable still has meaning even if parties are free to arbitrate without an Arbitration Order. If a party fails to seek an Arbitration Order within this thirty-day period and then files an arbitration demand, one of the respondents may refuse to arbitrate. In addition, if a jury-trial waiver is not permitted by applicable law, then a court order that the jury-trial waiver is not

---

[4] emphasis added

13

enforceable is not required, and a party may want to file an arbitration demand without seeking an order compelling arbitration.

Under the unambiguous language of the two instruments, arbitration may be started without an Arbitration Order in some circumstances. Therefore, the trial court erred in declaring as a matter of law that under Paragraph 43 of the Note and Paragraph 13 of the First Modification, "arbitration cannot be commenced until there is an Arbitration Order."

## F.    The trial court's declaration as to who may determine arbitrability

Carter also asserts that the trial court erred in declaring that under Paragraph 43 of the Note and Paragraph 13 of the First Modification, "only a court may determine the validity, enforceability, meaning, and scope of the [arbitration provisions in the Note and First Modification]." The parties agreed that "Disputes do not include the validity, enforceability, meaning, or scope of this arbitration provision and such matters may be determined only by a court." Under the Federal Arbitration Act, courts presume that parties to an arbitration agreement intend that courts rather than arbitrators decide issues as to the validity, scope, and enforceability of the arbitration clause. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631–33 (Tex. 2018). Though Carter argues otherwise, this agreement does not contradict precedent under which attacks on the validity of the contract as a whole, as opposed to attacks on the validity of the arbitration clause, are to be resolved by the arbitrator in the first instance. Under the plain text of the instruments, the parties agreed that "only a court may determine the validity, enforceability, meaning, and scope of the [arbitration provisions in the Note and First Modification]." Therefore, the trial court did not err in making the first declaration in the final judgment. *See Marzo Club, LLC*, 325 S.W.3d at 799–800.

**G.** **The declaration that Carter cannot force Amegy Bank to arbitrate the Carter Dispute**

Carter asserts that the trial court erred in declaring that Carter cannot force Amegy Bank to arbitrate the Carter Dispute because the arbitration clause provides that "Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum . . . as selected by the initiating party." But, this sentence does not address the circumstances under which the parties have agreed to arbitrate or the scope of the arbitration agreement. As discussed above, under the plain text of the instruments, the parties' agreement to arbitrate turns on either (1) a jury-trial waiver not being permitted by applicable law, or (2) a court ruling that a jury-trial waiver is not permitted. In its summary-judgment motion Amegy Bank asserted that the jury-trial waiver provision is enforceable under applicable law, and Amegy cited legal authorities showing that applicable law permits a jury-trial waiver. Indeed, Texas and federal law allow jury-trial waivers. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 132–33 (Tex. 2004); *Morgan*, 474 S.W.3d at 710. In addition, the undisputed summary-judgment evidence shows that no court has ruled that a jury-trial waiver is not permitted.

Even indulging the presumption that the Carter Dispute should be arbitrated and resolving any doubts as to whether the arbitration clause requires arbitration of the Carter Dispute in favor of arbitration, we can say with positive assurance that the arbitration clauses are not susceptible of an interpretation that would require arbitration of the Carter Dispute at this juncture. *See Osornia*, 367 S.W.3d at 712. Under the express language of the arbitration clauses, the parties' agreement to arbitrate is conditioned on either (1) a jury-trial waiver not being permitted by applicable law, or (2) a court ruling that a jury-trial waiver is not permitted. Amegy Bank's motion and summary-judgment evidence prove as a matter of law

15

that neither condition has occurred, so there is no agreement to arbitrate the Carter Dispute at this time. The strong policy in favor of arbitration cannot push the boundaries of a contractual provision beyond the scope intended by the parties or allow a court to modify the unambiguous meaning of the arbitration clause. *See id.*

Carter also asserts that under the contracts, either the jury-trial waiver is enforceable or the arbitration clause is enforceable, and because the arbitration clause is valid, irrevocable, and enforceable, the jury-trial waiver necessarily is not enforceable. This argument conflicts with the plain text of the instruments, under which the parties have not agreed to arbitrate the Carter Dispute unless (1) a jury-trial waiver is not permitted by applicable law, or (2) a court rules that a jury-trial waiver is not permitted.

Carter claims that the jury-trial-waiver provision applies if permitted by applicable law or by a court ruling, but that no summary-judgment evidence proves either proposition. In this argument, Carter does not correctly state the two conditions, which are (1) a jury-trial waiver not being permitted by applicable law, or (2) a court ruling that a jury-trial waiver is not permitted.

Under the applicable standard of review, we conclude the trial court did not err in declaring as a matter of law that Carter cannot force Amegy Bank to arbitrate the Carter Dispute. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 132–33; *Morgan*, 474 S.W.3d at 710; *Osornia*, 367 S.W.3d at 712.

## III. Conclusion

Under the express language of the arbitration clauses, the parties conditioned their agreement to arbitrate on either (1) a jury-trial waiver not being permitted by applicable law, or (2) a court ruling that a jury-trial waiver is not permitted. Amegy Bank's motion and summary-judgment evidence prove as a matter of law

16

that neither condition has occurred, and therefore that there is no agreement to arbitrate the Carter Dispute at this time. We conclude the trial court did not err in declaring as a matter of law that Carter cannot force Amegy Bank to arbitrate the Carter Dispute. Because the trial court's second and third declarations conflict with the unambiguous language of the instruments, we modify the trial court's judgment to delete these two declarations, and we affirm the judgment as modified.

/s/ Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Wise and Jewell.