

# NUMBER 13-19-00088-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

SCI TEXAS FUNERAL SERVICES, L.L.C., ET AL.,         Appellants,

**v.**

CLAUDIA MONTOYA, INDIVIDUALLY
AND AS NEXT FRIEND OF ORLANDO
ODELL MONTOYA JR., HERMINIA
LISA MONTOYA, LYDIA MARIA
MONTOYA, DENISE RENEE MONTOYA,
AND DANIELLE NICOLE MONTOYA,         Appellees.

---

### On appeal from the 107th District Court
### of Cameron County, Texas

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

SCI Texas Funeral Services, LLC (successor-in-interest to SCI Texas Funeral

Services, Inc.) d/b/a Restlawn Memorial Park, SCI Management, LP, SCI Shared

Resources, LLC, and Dignity Memorial Network, Inc., appeal an order denying their motion to compel arbitration. We reverse and remand.

## I. BACKGROUND

The underlying lawsuit arises from events surrounding the interment of decedent Orlando Odell Montoya. In their original petition,[1] the appellees, who are family members of Orlando, alleged that Orlando passed away and his remains were taken to Garcia & Trevino Funeral Home of Mercedes, Texas. After visitation and a memorial service, the parties and mourners proceeded to Restlawn Memorial Cemetery in La Feria, Texas, for a graveside ceremony. There, while the family was placing flowers on Orlando's coffin, the lowering device for the coffin failed and the coffin fell and flipped into the grave. The maintenance workers attempted to raise the coffin, however, it fell a second time and cracked open. After the mourners departed, the workers removed the casket and Orlando's remains, placed Orlando's remains in a "shed," and ultimately placed his remains in a second casket.

The appellees filed suit against appellants for negligence, negligent hiring, breach of contract, deceptive trade practices, and an unconscionable action or course of action. They sought "general" damages, mental anguish damages, and exemplary and "multiple" damages. The appellees include the decedent's widow, Claudia Montoya, who filed suit individually and as next of friend of their minor children Orlando Odell Montoya Jr. and

---

[1] According to the clerk's record, the "Plaintiffs' Original Petition and Discovery Requests" was filed on August 28, 2018; the trial court signed the order denying arbitration on February 21, 2019; and the "Plaintiffs' First Amended Petition" was filed on August 23, 2019. We limit our review to the record that was before the trial court when it ruled on the motion to compel arbitration. *See Perry Homes v. Cull*, 258 S.W.3d 580, 596 n.89 (Tex. 2008); *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 774 (Tex. App.—El Paso 2015, no pet.).

Hermina Lisa Montoya; and the adult daughters of the decedent, Lydia Maria Montoya, Denise Renee Montoya, and Danielle Nicole Montoya.

The appellants filed a motion to compel arbitration and for abatement of the suit pending arbitration. They urged that Claudia and Orlando had signed a contract containing an arbitration agreement; the matter involved interstate commerce; the arbitrator should decide issues pertaining to arbitrability and the trial court should only resolve "non-signatory" issues. The appellants supported their motion to compel arbitration with, inter alia, a copy of the arbitration agreement and the affidavit of Abelardo Perez. Perez's affidavit stated, in relevant part:

2.    I am the Market Manager of SCI Texas Funeral Services, LLC. I also served in the same capacity for SCI Texas Funeral Services, Inc., at the time of the burial of Orlando Odell Montoya and at the time of the contract discussed in this affidavit. It is in this capacity that I have personal knowledge of the facts stated herein. SCI Texas Funeral Services, LLC, is the successor in interest to SCI Texas Funeral Services, Inc. When I use the term "SCI Texas" in this affidavit, I am referring to SCI Texas Funeral Services, Inc., with regard to events prior to the merger of March 2017 and to SCI Texas Funeral Services, LLC, regarding events occurring thereafter.

3.    The company that contracted and dealt with Plaintiff Claudia Montoya and her husband Orlando Odell Montoya regarding the Orlando Odell Montoya's burial was SCI Texas.

4.    The plaintiffs had no dealings with Defendants SCI Management, LP, SCI Shared Resources, LLC, and Dignity Memorial Network, Inc. I will refer to these defendants collectively as the "SCI Affiliates."

5.    The following was true at the time SCI Texas contracted with Mr. and Mrs. Montoya, at the time of the burial of Mr. Montoya, and through the present day:

     a.    SCI Texas did and does business as Restlawn Memorial Park;

     b.    the SCI Affiliates were and are entities affiliated with SCI Texas; and

c.     all of the defendants were and are owned indirectly by the same parent company, Service Corporation International.

6.     Additionally, the facts stated in this paragraph were true at the time the agreement described above was entered and continue to be true today. The interment rights and goods and services sold by SCI Texas have been sold to out-of-state and international customers as well as Texans. Such goods and services include interment services, memorials, grave markers, and related items. Further, goods that SCI Texas sold to Texas residents, including the plaintiffs, like caskets, grave markers, and concrete liners, are purchased from out-of-state companies. In addition, services provided by SCI Texas to Texas residents, including the plaintiffs, utilize equipment purchased from out-of-state companies, such as machinery used to open graves. Thus, the transactions with the plaintiffs, like all of SCI Texas's transactions, involved interstate commerce.

Perez attached to his affidavit a copy of the contract, entitled "Cemetery Interment Rights, Merchandise, and Services Purchase/Security Agreement" between appellants, Orlando, and Claudia. In relevant part, the contract included a notice before the signature lines that stated: "NOTICE: BY SIGNING THIS AGREEMENT, PURCHASER IS AGREEING THAT ANY CLAIM PURCHASER MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND PURCHASER IS GIVING UP HIS/HER RIGHT TO A COURT OR JURY TRIAL AS WELL AS HIS/HER RIGHT OF APPEAL." The contract contains the signatures of Orlando and Claudia. The contract further provides:

PURCHASER AGREES THAT ANY CLAIM HE/SHE MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION OF AN

4

APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND PROCEDURES UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY OR AFFILIATE CORPORATIONS. EXCEPT AS MAY BE REQUIRED BY LAW, NEITHER PARTY NOR AN ARBITRATOR MAY DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION HEREUNDER WITHOUT THE PRIOR WRITTEN CONSENT OF BOTH PARTIES.

The contract is numbered 008973 and is dated September 5, 2011.

The record indicates that the same day, the parties executed a "Child and Grandchild Protection Plan Certificate," which states that it is a "supplement" to the "Cemetery Interment Rights, Merchandise and Services Purchase/Security Agreement" and "is subject to all of the terms and conditions set forth on Agreement Number 008973 entered into on 9-5-11." The agreement expressly named Denise, Danielle, Lydia, Herminia, and Orlando Jr., and provided those individuals with contiguous interment rights:

As an additional pre-need benefit, at no additional cost to the Purchaser(s), and subject to the terms and conditions stated below, in the event of death of any unmarried child (including any legally adopted child/stepchild) or grandchild (including legally adopted grandchild/stepgrandchild) under the age of 21 of the Purchaser or Co-Purchaser, the Cemetery, whenever possible, will provide a contiguous Interment Right of the same type being purchased. In the event that a contiguous Interment Right is not available, then the Interment Right being purchased may be exchanged for a comparable Interment Right else-where in the Cemetery, provided that the original Interment Rights are re-conveyed to the Cemetery.

The above obligations are subject to the following additional conditions and restrictions:

5

A. To the best of their knowledge at the time this Certificate is signed, Purchaser(s) certifies that all children and/or grandchildren named herein are in good health and not under the care of a medical practitioner for any chronic ailment or disease.

B. Purchaser(s) shall not be in default on any installment payment due under the Agreement for a period exceeding thirty (30) days.

C. Benefits are valid only if the interment is made in an affiliated cemetery.

D. The maximum total benefit provided each child/grandchild named herein shall not exceed $5,000.00.

E. The Purchaser shall be responsible for any endowment care charges.

F. The cost of merchandise, interment, disinterment and reinterment will be paid by the Purchaser(s).

G. The child or grandchild's death shall not have occurred from suicide.

H. In the event the Agreement is cancelled for any reason whatsoever, the Child and Grandchild Protection Plan shall become null and void in its entirety.

I. The benefit is available only to those who purchase items pre-need.

The appellees filed a response in opposition to the appellants' motion to compel arbitration. The appellees asserted that Claudia was not bound by the arbitration clause because the arbitration clause lacked mutuality and was illusory.[2] They further argued

---

[2] In the trial court, appellees alleged that Claudia was not bound by the arbitration agreement because appellants retained the right to cancel the contract and the appellants were not required to arbitrate their claims, if any, against appellees. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) ("When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract."); *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994) (noting that a promise is illusory if it fails to bind the promisor). In this appeal, appellees do not contend that the arbitration agreement lacked mutuality or that it was illusory, and they do not urge that the trial court's ruling in favor of arbitration could be affirmed on either ground. In any event, we disagree with appellees' arguments. Based on its express terms, the arbitration agreement required *both* appellants and appellees to arbitrate claims within its scope, and the arbitration agreement is part of a separate interment contract with mutual and binding obligations. *See In re 24R, Inc.*, 324 S.W.3d at 567; *cf. Light*, 883 S.W.2d at 645. We have previously rejected comparable arguments on a substantially similar contract. *See Serv. Corp. Int'l v. Ruiz*, No. 13-16-00699-CV, 2018 WL 549196, at *5 (Tex. App.—Corpus Christi Jan. 25, 2018,

6

that the appellees who were not signatories to the contract, including two minor children, were not bound as third-party beneficiaries; equitable estoppel did not apply to bind the non-signatories; and minor children cannot be bound by the arbitration agreement.

After a non-evidentiary hearing, by order signed on February 21, 2019, the trial court denied the appellants' motion to compel arbitration and ordered the appellants to respond to all discovery submitted to them with the appellees' original petition within thirty days.

This appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (authorizing interlocutory appeals under the FAA); *id.* § 171.098(a)(1) (authorizing interlocutory appeals under the Texas Arbitration Act). By one issue, appellants contend that the trial court abused its discretion by signing the February 21, 2019 "Order Denying Defendant's Motion to Compel Arbitration." By two sub-issues, appellants contend that the trial court abused its discretion by refusing to compel arbitration and by refusing to stay the litigation proceedings pending arbitration. Appellants subsequently filed a motion for emergency stay of the trial court proceedings during the pendency of this accelerated appeal. Appellants argued that their right to arbitration would be diminished by incurring costs to respond to discovery in the judicial proceedings which may not need to be incurred during arbitration. This Court granted appellants' request for emergency relief in part and ordered discovery to be stayed pending further order of this Court, or until the case is finally decided. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). Subsequently, the appellees have filed a brief and two "supplemental" briefs, and appellants have filed a reply thereto.

_____

pet. denied) (mem. op.). Accordingly, the trial court could not have properly denied arbitration based on these defenses.

7

## II. STANDARD OF REVIEW

The trial court's ruling on a motion to compel arbitration is reviewed for an abuse of discretion. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, 139 S. Ct. 184 (2018); *Enter. Field Servs., LLC v. TOC–Rocky Mountain, Inc.*, 405 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding). Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see Robinson*, 590 S.W.3d at 525. Whether a valid arbitration agreement exists and whether the arbitration agreement is ambiguous are questions of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). We review de novo whether an arbitration agreement is enforceable. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

## III. ARBITRATION

Appellants assert that the Federal Arbitration Act (FAA) applies to this case. In their first supplemental brief, appellees agree "that the contract involves interstate commerce and thus is subject to the [FAA]," and that this Court "should apply the FAA to this appeal." The FAA generally governs arbitration provisions in contracts involving interstate commerce. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding) (citing 9 U.S.C. § 2). As noted previously, Perez testified by affidavit that appellants sell

8

interment rights and goods and services including memorials, grave markers, and related items, to in-state, out-of-state, and international customers. He further testified that the goods that appellants sell to Texas residents, including the appellees, such as caskets, grave markers, and concrete liners, are purchased from out-of-state companies. Perez also testified that services provided by appellants to Texas residents, including the appellees, utilize equipment purchased from out-of-state companies, such as machinery used to open graves. The FAA thus applies to this dispute. *See*, *e.g.*, *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding) (concluding that the FAA applied to a case wherein the defendant transported materials across state lines and prepared billings for the job in a different state); *ReadyOne Indus., Inc.. v. Flores*, 460 S.W.3d 656, 662 (Tex. App.—El Paso 2014, pet. denied) (concluding that the FAA applied where the employer regularly engaged in interstate commerce through the purchase and receipt of goods and services from outside of Texas, and through the manufacture and shipment of goods outside of the state). Accordingly, we apply the FAA in this case.

A party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *Bonsmara Nat. Beef Co., v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If the movant establishes that an arbitration agreement governs the dispute, then the burden shifts to the party opposing arbitration to establish an affirmative defense to the arbitration agreement. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573

(Tex. 1999) (orig. proceeding) (per curiam); *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

Because state and federal policies favor arbitration, a strong presumption exists in favor of arbitration and courts are required to resolve doubts regarding arbitrability in favor of referring the dispute to arbitration. *Ellis*, 337 S.W.3d at 862; *In re FirstMerit Bank N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). A court has no discretion but to compel arbitration and stay its own proceedings when a claim falls within the scope of a valid arbitration agreement and there are no defenses to its enforcement. *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 392 S.W.3d 633, 635 (Tex. 2013) (per curiam); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753–54; *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 535–36 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## IV. THE EXISTENCE OF AN AGREEMENT TO ARBITRATE

When relying on a contract to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement, and whether a non-signatory may enforce an arbitration agreement's terms is a question within this inquiry. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). Courts determine whether an enforceable agreement to arbitrate exists by applying "ordinary principles of state contract law[.]" *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738; *see Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. App.—El Paso 2013, no pet.).

Appellants met their initial burden to establish an agreement to arbitrate by presenting the "Cemetery Interment Rights, Merchandise, and Services

Purchase/Security Agreement" supported by Perez's affidavit. *See APC Home Health Servs., Inc.*, 600 S.W.3d at 389. This agreement was signed by Claudia, and she does not contest the authenticity of her signature. However, five of the appellees in this case did not sign the agreement. A party will not be forced to arbitrate absent a binding agreement to do so. *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 620 (Tex. 2020). "Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms, JV*, 547 S.W.3d at 633. Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo rather than with the deference that must be accorded to arbitrators. *Id.* at 629.

Nonparties may be bound to a contract under various legal principles. *Bonsmara Nat. Beef Co.*, 603 S.W.3d at 400; *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding). More specifically, non-signatories to an arbitration agreement may be bound when rules of law or equity would bind them to the contract generally. *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 644. Courts have articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James Farms, JV*, 547 S.W.3d at 633; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. Direct benefits estoppel is a type of equitable estoppel. *Rachal*, 403 S.W.3d at 845–46 & n.5.

Appellants argue that the contract's language mandates arbitration and the non-signatory appellees are bound to arbitrate their claims under third-party beneficiary and

11

estoppel theories. Because it is dispositive, we first address the appellants' third-party beneficiary argument.

Like other contracts, arbitration agreements may be enforced against third-party beneficiaries if the parties to the contract intended to secure a benefit to that third party and the parties entered the contract directly for the third party's benefit. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding); *see Jody James Farms, JV*, 547 S.W.3d at 635. The benefit must be more than incidental, and the contracting parties' intent to confer a direct benefit to a third party must be clearly and fully spelled out. *Jody James Farms, JV*, 547 S.W.3d at 635; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "[G]eneral beneficence does not create third-party rights." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306–07 (Tex. 2007) (per curiam). Whether "the third party intended or expected to benefit from the contract" is irrelevant, because "only the 'intention of the contracting parties in this respect is of controlling importance.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017); *see Jody James Farms, JV*, 547 S.W.3d at 635. As a matter of interpretation, "a mere description" of the contract's intended use cannot—on its own—confer third-party beneficiary status. *Jody James Farms, JV*, 547 S.W.3d at 635. Further, a "court will not create a third-party beneficiary contract by implication." *MCI Telecomms. Corp.*, 995 S.W.2d at 651.

Here, the "Child and Grandchild Protection Plan Certificate" expressly identifies a specific, limited group of individuals—that is, the five non-signatory appellees—and makes them direct beneficiaries of the contract, and the benefits to them with regard to their interment rights are neither indirect nor incidental. *See Jody James Farms, JV*, 547

12

S.W.3d at 636; *First Bank*, 519 S.W.3d at 103; *City of Houston v. Williams*, 353 S.W.3d 128, 145–46 (Tex. 2011); *Tawes v. Barnes*, 340 S.W.3d 419, 428 (Tex. 2011); *S. Tex. Water Auth.*, 223 S.W.3d at 306–07.

We conclude that appellants have met their burden to establish the existence of a valid and enforceable arbitration agreement against the signatory and non-signatory appellees. *See Jody James Farms, JV*, 547 S.W.3d at 633. We note, in this regard, that appellees contend that our decision should be otherwise regarding the minor children Orlando Odell Montoya Jr. and Hermina Lisa Montoya based our decision in *In re SSP Partners*, 241 S.W.3d 162, 171 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding [mand. denied]). In that case, we concluded that minor children were not bound by an arbitration agreement where Garcia, the children's mother, agreed to arbitrate her claims, but did not agree to arbitrate the claims of her minor children. *Id.* at 169. After reviewing the text of the arbitration agreement, which stated that it bound and benefited the parties' children, we reasoned that there was no provision in the agreement stating that Garcia, on behalf of her children, was agreeing to submit the children's claims to arbitration, and she did not sign the agreement on behalf of the children or as representative of the children. *Id.* We concluded that the children were not bound by the express terms of the agreement. *Id.*

*SSP Partners* is distinguishable on its facts from the case currently before us. There, Garcia did not enter the contract for her children's benefit, and we concluded that the children were not third-party beneficiaries of the arbitration agreement. *Id.* Here, the contract expressly requires arbitration by third party beneficiaries, the children are specifically identified in the contract, and we have concluded that the children are third-

13

party beneficiaries. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–33; *cf. In re Ford Motor Co.*, 220 S.W.3d 21, 24 (Tex. App.—San Antonio 2006, orig. proceeding) (binding children to arbitration clause signed by parents in a breach of warranty case where the children sued on the contract).

## V. WHETHER THE CLAIMS AT ISSUE FALL WITHIN THE AGREEMENT'S SCOPE

We have determined that the arbitration provision at issue is enforceable against appellees. However, appellants must also establish that the dispute is within the scope of the agreement. *See Bonsmara Nat. Beef Co.*, 603 S.W.3d at 397; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. Appellants contend that (1) the scope of the arbitration agreement is a matter devoted to the discretion of the arbitrator rather than the trial court, and (2) appellees "did not argue in the trial court that any of the claims are outside the scope of the arbitration provision." The arbitration agreement specifies, in relevant part, that the "purchaser agrees that any claim he/she may have relating to the transaction contemplated by this agreement (including any claim or controversy regarding the interpretation of this arbitration clause) shall be submitted to and finally resolved by mandatory and binding arbitration in accordance with the applicable rules of the [AAA]."

Under the FAA, courts presume that parties to an arbitration agreement intend that courts rather than arbitrators decide issues as to the validity, scope, and enforceability of the arbitration clause. *Carter v. ZB, Nat'l Ass'n*, 578 S.W.3d 613, 623 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. *Robinson*, 590 S.W.3d at 532. In this regard, we note that, contrary to appellants' arguments, the mere incorporation of the AAA rules does not indicate a clear intent to

14

devote arbitrability decisions to the arbitrator. *See Jody James Farms, JV*, 547 S.W.3d at 631–33.

In this case, the arbitration agreement contains language, as quoted previously, that clearly and unmistakably delegates determinations regarding the interpretation of the arbitration clause to the arbitrator. Nevertheless, the supreme court has held that "[w]hen a party disputes the scope of an arbitration provision or raises a defense to the provision, the trial court, not the arbitrator, must decide the issues." *In re Hous. Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009) (orig. proceeding) (per curiam). And, contrary to appellant's contentions, appellees allege that their claims fall outside the scope of the arbitration agreement because they arise from common law tort duties rather than from the contract between appellants and appellees. Appellees correctly argue that there is an independent duty under Texas law not to negligently mishandle a corpse. *See SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 546 (Tex. 2018); *Rader Funeral Home, Inc. v. Chavira*, 553 S.W.3d 10, 17 (Tex. App.—El Paso 2018, no pet.); *see also SIG-TX Assets, LLC v. Serrato*, No. 05-18-00462-CV, 2019 WL 1771301, at *4 (Tex. App.—Dallas Apr. 23, 2019, no pet.) (mem. op.) (affirming the trial court's denial of a motion to compel arbitration regarding the handling of a decedent's remains).

We "resolve any doubts about an arbitration agreement's scope in favor of arbitration." *In re FirstMerit Bank*, 52 S.W.3d at 753. The presumption in favor of arbitration "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (per curiam) (quoting *Neal v. Hardee's Food Sys.,*

15

*Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)); *see Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d at 225.

To determine whether a claim falls within the scope of the agreement, courts must focus on the factual allegations of the pleadings rather than the legal causes of action asserted. *See Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d at 225; *In re FirstMerit Bank*, 52 S.W.3d at 754; *Marshall*, 909 S.W.2d at 900. Claims must be submitted to arbitration if "liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d at 132; *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 77 (Tex. App.—Texarkana 2014, no pet.). If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement, then the claim is arbitrable. *Rodriguez v. Tex. Leaguer Brewing Co.*, 586 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 105 (Tex. App.—San Antonio 2016, no pet.); *Glassell Producing Co.*, 422 S.W.3d at 77; *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In contrast, a "claim is not subject to arbitration only if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract." *Glassell Producing Co.*, 422 S.W.3d at 78; *see Cotton Commercial USA, Inc.*, 387 S.W.3d at 108. Arbitrability depends on the substance of the claim, not artful pleading. *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 208–09 (Tex. 2007) (orig. proceeding) (per curiam). Thus, parties to an arbitration agreement "may not evade arbitration through artful pleading." *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 569 (Tex. App.—

Houston [1st Dist.] 2017, no pet.) (quoting *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (orig. proceeding)).

Here, the contract at issue provided that "by signing this agreement, purchaser is agreeing that *any claim* purchaser may have against the seller shall be resolved by arbitration and purchaser is giving up his/her right to a court or jury trial as well as his/her right of appeal." (Emphasis added). Separately, the contract provided that "purchaser agrees that *any claim he/she may have relating to the transaction contemplated by this agreement (including any claim or controversy regarding the interpretation of this arbitration clause)* shall be submitted to and finally resolved by mandatory and binding arbitration." (Emphasis added). Further, the contract stated that "[t]his agreement to arbitrate also applies to *any claim or dispute* between or among the seller, you as the purchaser, [and] any person who claims to be a third-party beneficiary of this agreement . . .." (Emphasis added).

The use of such broad language evidences the parties' intent to be inclusive rather than exclusive. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 19–20 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (regarding an agreement to arbitrate "any disputes" arising out of or in connection with the agreement); *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (regarding an agreement to arbitrate "[a]ny dispute arising out of or in connection with this contract" and concluding that the agreement "embrace[d] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); *Glassell Producing Co.*, 422 S.W.3d at 77–78 (interpreting a clause agreeing to arbitrate claims "arising in any way out of, relating to or in connection with this letter

17

agreement" broadly); *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 413 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (concluding that the language "any dispute, controversy or claim arising out of or in connection with this Contract" was broad). Further, the scope of an arbitration clause that includes all "disputes," and not just claims, is very broad and encompasses more than claims "based solely on rights originating exclusively from the contract." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017) (examining a forum-selection clause and noting the analogies between such clauses and arbitration agreements); *see Henry*, 551 S.W.3d at 115–16; *Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 206 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Didmon*, 438 S.W.3d at 695.

The factual allegations in the petition are entirely referable to Orlando's interment, which was the subject of the contract between appellants and appellees. These allegations refer, inter alia, to: (1) the appellants' failure "to act as reasonably prudent providers of funeral services under the same or similar conditions, when through their acts and/or omissions they improperly and negligently operated the casket lowering device during the funeral" causing the casket to fall and crack open; (2) the appellants' "failure to exercise ordinary care in selecting, operating and/or replacing the casket lowering device (equipment) including its component parts as a funeral service provider of ordinary prudence would under the same or similar circumstances"; and (3) the appellants' "negligent hiring, supervision, training or retention of [their] employees, representatives and agents."

Given the presumption favoring arbitration and the policy of construing arbitration clauses broadly as noted above, it follows that the arbitration clause here applies—just

18

as it says—to all disputes, even those relating only indirectly to the agreement. *See Henry*, 551 S.W.3d at 116. The contract contains a broadly written arbitration clause, and the allegations touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract. *See Rodriguez*, 586 S.W.3d at 432; *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 105; *Glassell Producing Co.*, 422 S.W.3d at 77. In short, the entire factual sequence of events delineated in the appellees' pleadings was engendered by and rested on the contract between the parties. Stated otherwise, we cannot say with positive assurance that the arbitration agreement is not susceptible to an interpretation that would cover the appellees' claims. *See Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d at 225; *Prudential Sec. Inc.*, 909 S.W.2d at 899.

Based on the foregoing, we conclude that the trial court abused its discretion by denying appellants' motion to compel arbitration. We sustain appellants' first sub-issue.

## VI. STAY PENDING ARBITRATION

In their second sub-issue, appellants contend that the trial court abused its discretion by denying their motion to stay the litigation entirely pending arbitration. In response to this argument, the appellees assert that their claims are not subject to arbitration, and a stay is "not required, and improper, when claims are not subject to arbitration." As noted, we have previously resolved appellees' argument regarding the merits of arbitration against them.

The FAA requires courts to stay litigation of issues that are subject to arbitration. See 9 U.S.C.A. § 3; *In re Merrill Lynch & Co., FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding). The Texas Supreme Court has held that when an issue is pending in both arbitration and litigation, arbitration should be given priority to the extent it is likely to

resolve issues material to the lawsuit. *In re Merrill Lynch & Co.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) (per curiam); *In re Merrill Lynch Co., FSB*, 235 S.W.3d at 195; *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 500 (Tex. App.—Dallas 2011, pet. denied).

Because we have determined that the trial court erred in denying appellants' motion to compel arbitration, we hold that the trial court must compel arbitration and stay any further proceedings in the trial court. See 9 U.S.C.A. § 3 (requiring stay of proceedings in trial court "upon any issue referable to arbitration"); *In re Merrill Lynch & Co., FSB*, 235 S.W.3d at 195; *In re James E. Bashaw & Co.*, 305 S.W.3d 44, 57 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

We sustain appellants' second sub-issue.

### VII. CONCLUSION

We conclude that the trial court erred in refusing to compel arbitration and denying appellants' motion to stay. Accordingly, we lift the stay previously imposed in this case. We reverse the trial court's February 21, 2019 order denying arbitration, and we remand the case with instructions that the trial court proceeding be stayed and that the parties be compelled to arbitrate.

GINA M. BENAVIDES
Justice

Delivered and filed on the
17th day of September, 2020.