**In re MERRILL LYNCH & CO., INC. and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Relators.**

No. 09–0161.

Supreme Court of Texas.

June 25, 2010.

Rehearing Denied Aug. 27, 2010.

Charles A. Gall, Joel Randall Sharp, Eric Ross Hail, Hunton & Williams LLP, Robert B. Gilbreath, Hawkins, Parnell Thackston & Young, LLP, Dallas TX, for Relators.

Lewis T. LeClair, Robert E. Goodfriend, Anthony Matthew Garza, Rosemary Snider, Scott R. Jacobs, McKool Smith, P.C., Deborah G. Hankinson, William Richard Thompson II, Ryan D. Clinton, Hankinson Levinger LLP, Dallas TX, for Real party in interest.

PER CURIAM.

In this mandamus proceeding, we must decide whether the trial court abused its discretion when it refused to stay litigation that could moot the potential arbitration of related claims in the same lawsuit. In *In re Merrill Lynch Trust Co.*, we declared that there are "many circumstances in which litigation must be abated to ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation." 235 S.W.3d 185, 196 (Tex. 2007). We applied this principle in *Merrill Lynch Trust* to stay the plaintiffs' claims against two defendants until the plaintiffs' related claims against a third defendant were arbitrated. *Id.* Here, we apply the same principle to hold that the trial court abused its discretion by refusing to stay the litigation related to one corporation, MetroPCS Communications, Inc. (Communications), until the identical claims of its corporate affiliate, MetroPCS Wireless, Inc. (Wireless), are decided by arbitration or until Wireless is a member of a certified class action. Accordingly, we conditionally grant relator Merrill Lynch's [1] petition for writ of mandamus.

In this lawsuit, two corporate subsidiaries of MetroPCS, Wireless and Communications, assert identical statutory and common-law claims. The claims arise out of certain security investments sold by Merrill Lynch in 2006 (to Wireless) and 2007 (to Communications). Wireless later transferred all of its securities at issue to Communications. Then, just two months later, both Wireless and Communications sued Merrill Lynch alleging that the securities were characterized at the time of sale as a low-risk investment but were, in fact, high-risk.

Wireless and Communications, jointly referred to in their petition as "MetroPCS," assert identical claims with virtually identical facts. Their pleadings do not meaningfully distinguish between the two affiliates, which also share counsel. The only relevant differences between the affiliates pertain to the arbitration provisions contained in a separate contract between Wireless and Merrill Lynch unrelated to the investments; Communications did not

---

1. Relators are Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Inc., collectively referred to herein as Merrill Lynch. Wireless and Communications are jointly referred to as MetroPCS.

sign an agreement with an arbitration clause. The Wireless agreement provides, in relevant part:

All controversies that may arise between [Wireless] and Merrill Lynch, including, but not limited to, those involving any transaction or the construction, performance or breach of this or any other agreement between [Wireless] and Merrill Lynch, whether entered into prior to, on or subsequent to the date hereof, shall be determined by arbitration.

The Wireless contract also contains a class-action carve-out clause that was adopted under, and mimics, National Association of Securities Dealers (NASD) Rule 10301(d)(3).[2] The clause allows plaintiffs to pursue or participate in class actions by preventing defendants from pulling plaintiffs away from a putative or certified class action simply by compelling arbitration:

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the Customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

Wireless claims to be a member of two class actions in the Southern District of New York, *Burton v. Merrill Lynch & Co.,* CA–08–CV–03037 (S.D.N.Y. filed Mar. 25, 2008) and *Stanton v. Merrill Lynch & Co.,*

CA–08–CV–03054 (S.D.N.Y. filed Mar. 26, 2008), both of which were consolidated into *In re Merrill Lynch Auction Rate Securities Litigation,* CA–08–CV–3037–LAP (S.D.N.Y. consolidated Oct. 31, 2008). The federal court recently dismissed the consolidated action with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The dismissal has been appealed.

In the trial court below, Merrill Lynch moved to compel arbitration under the Federal Arbitration Act (FAA) and requested a stay of all litigation. The trial court initially decided to compel arbitration for Wireless's claims and to stay the litigation of Communications' claims, but on rehearing (when the class actions were brought to the court's attention) it stayed Wireless's claims until a class certification decision was rendered in the class action or Wireless determined to opt out. But the trial court did not stay the related Communications litigation. Communications then served Merrill Lynch with extensive discovery requests. Merrill Lynch sought mandamus relief, which the court of appeals denied. *See* 315 S.W.3d 893.

The rules applicable to mandamus review of a trial court's order granting or denying a motion to compel arbitration and stay related litigation are well known. A party seeking relief pursuant to the FAA from the trial court's denial of arbitration or a stay of litigation must file a petition for writ of mandamus. *See In re Merrill Lynch Trust Co.,* 235 S.W.3d at 188; *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 779–80 (Tex.2006); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–

---

**2.** We note that the NASD became the Financial Industry Regulation Authority (FINRA) in July 2007. *See In re NEXT Fin. Group, Inc.,* 271 S.W.3d 263, 265 n. 1 (Tex.2008) (per curiam).

73 (Tex.1992).[3] Mandamus will issue to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 462 (Tex.2008); *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex. 2004). Under the FAA, mandamus relief is appropriate if the trial court abuses its discretion by failing to stay the litigation or compel arbitration. *In re Merrill Lynch Trust Co.,* 235 S.W.3d at 188.

Merrill Lynch argues that our decision in *Merrill Lynch Trust* is controlling and requires a stay of Communications' litigation. We agree. In *Merrill Lynch Trust,* the plaintiffs sued a Merrill Lynch employee and two Merrill Lynch affiliates and sought to litigate their claims, but we determined that the substance of the plaintiffs' claims against the employee were against the company, Merrill Lynch, and required the plaintiffs to abide by their agreement to arbitrate. *Id.* at 188, 190. We also rejected the attempt of the affiliates—who had not signed an arbitration agreement with the plaintiffs—to compel the claims against them to arbitration, but we concluded that the nonsignatories' litigation should be stayed until the plaintiffs' arbitration with Merrill Lynch was complete. *Id.* at 191–96. We reasoned that "when an issue is pending in both arbitration and litigation ... arbitration 'should be given priority to the extent it is likely to resolve issues material to this lawsuit.'" *Id.* at 195 (quoting *AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co.,* 242 F.3d 777, 783 (8th Cir.2001)). Thus, we concluded that the litigation involving the nonsignatories to the arbitration agreement should be stayed lest it undermine issues to be re-solved in the arbitration between the signatories. *Id.* at 196.

■ The key facts in *Merrill Lynch Trust* and in this case are nearly identical. There, the litigation involved claims relating to signatories and non-signatories to the arbitration agreement. The same is true here. There, some claims were subject to an arbitration agreement and some were not. So too here. There, the parallel litigation threatened to undermine or moot the arbitration, thereby negating the parties' agreement and bargained-for arbitration rights. Again, the same is true here. The only meaningful factual distinction between this case and *Merrill Lynch Trust* is the class-action clause, which changes the arbitration from currently pending to potentially pending at some point in the future. We must decide if this distinction compels a different outcome. On these facts, we hold that it does not.

As noted, the class-action carve-out clause mimics NASD Rule 10301(d)(3). That rule maintains access to courts for class actions while preserving the right to arbitrate individual claims, having been implemented to prevent defendants from pulling plaintiffs away from a putative class action by enforcing arbitration provisions. Now, as stated by the Securities and Exchange Commission, plaintiffs are afforded the opportunity to evaluate their class-action options:

> [I]n all cases, class actions are better handled by the courts and ... investors should have access to the courts to resolve class actions efficiently. In the past, individuals who attempted to certify class actions in litigation were subject to the enforcement of their separate arbitration contracts by their broker-deal-

---

**3.** While not applicable here, we note that § 51.016 of the Civil Practice and Remedies Code was amended effective September 1, 2009 to allow an interlocutory appeal of an order denying a motion to compel arbitration under the FAA. *See* TEX. CIV. PRAC. & REM.CODE § 51.016.

ers. Without access of class actions in [appropriate] cases, both investors and broker-dealers have been put to the expense of *wasteful, duplicative litigation.* The new rule ends this practice.

Order Approving Proposed Rule Change Relating to Exclusion of Class Actions from Arbitration Proceedings, Securities and Exchange Commission Release No. 34–31371, 57 Fed. Reg. 52,659, 52,661 (Nov. 4, 1992) (emphasis added). Rule 10301(d)(3) was not intended to provide a signatory with sanctuary from arbitration while a non-signatory affiliate simultaneously conducts discovery and chips away at the same issues in litigation. Accordingly, Communications cannot litigate its claims before Wireless is a member of a certified class action for resolution of its claims. In this situation, a stay is appropriate because the alternative—allowing Communications to continue litigating— would create duplicative litigation, contrary to the rule's intent. More importantly, this litigation, if allowed to proceed to its end, could moot the contemplated arbitration between Wireless and Merrill Lynch, destroying the latter's bargained-for rights.

Further, the Communications litigation will not, as MetroPCS argues, be stayed for an indefinite period of time. Rather, as the clause states, the arbitration-or-class-action decision can continue unresolved for a time, but only until (1) the class certification is denied, (2) the class is decertified, or (3) Wireless is excluded from the class by the court. The Wireless contract unambiguously defers enforcement of the arbitration agreement "until" one of those three events occurs. The agreement presumes that any disputes remain ultimately arbitrable should one of three designated events occur or if Wireless opts out of the class. Recent events in the consolidated action illustrate another option—dismissal of the class action on the merits before the class is certified.[4] If the district court's judgment is upheld on appeal, the consolidated action is definitively terminated and the class-action clause plainly does not prevent arbitration of individual claims. But if the judgment is reversed, the case will return to the district court and proceed to the class-certification stage. In that event, occurrence of one of the three designated events in the contract (or Wireless's own choice) will govern when the arbitration occurs.

We disagree with the suggestion that Wireless will *never* go to arbitration. It is entirely possible that Wireless *will* go to arbitration. We understand that waiting on a decision from Wireless or the federal courts could defer the completion of Communications' litigation, but while "[t]rial judges cannot deny a party its day in court, . . . they have always had wide discretion to say when that day will be." *In re Merrill Lynch Trust Co.,* 235 S.W.3d at 195.

As we observed, this case presents one of those "many circumstances in which litigation must be abated to ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation." *Id.* at 196. Under NASD Rule 10301 and the agreement, Wireless has the

---

4. The parties dispute the effect of the federal court's dismissing the consolidated action. Merrill Lynch argues that the dismissal removes any barrier to arbitration presented by the class-action clause because the consolidated action is terminated; MetroPCS contends that the consolidated action survives while on appeal and the class-action clause is still in effect. For purposes of this proceeding, we assume that MetroPCS is correct. There is little authority on this point, but as this question does not affect the outcome here, we do not linger over it. We further assume, though the parties dispute the point, that Wireless is within the proposed class definition in the consolidated action.

right to pursue the class action. But in the meantime, Communications cannot commence individual litigation to decide identical issues merely because Wireless is contemplating the class-action option. At the end of the day, Wireless's claims are still arbitrable, if not immediately, then at the occurrence of a known contingency—including Wireless's own choice. Allowing Communications' claims to proceed could moot the arbitration between Wireless and Merrill Lynch and undermine Merrill Lynch's bargained-for arbitration rights. Therefore, we conclude the trial court abused its discretion by refusing to stay Communications' identical claims.

Accordingly, without hearing oral argument, *see* Tex.R.App. P. 52.8(c), we conditionally grant mandamus relief and direct the trial court to grant Merrill Lynch's motion to stay Communications' claims. We are confident that the court will comply, and the writ will issue only if it does not.

Justice LEHRMANN did not participate in the decision.