

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-12-00218-CV
_____

WELLS FARGO FINANCIAL TEXAS, INC., APPELLANT

V.

ANITA VALERO AND EVA SHIELLS, GUARDIANS OF
THE PERSON AND ESTATE OF ABDENAGO VALERO,
APPELLEES

On Appeal from the 121st District Court
Yoakum County, Texas
Trial Court No. 9168, Honorable Kelly G. Moore, Presiding

August 21, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ

This is an accelerated appeal from an order denying an application to compel

arbitration.[1]  Appellant, Wells Fargo Financial Texas, Inc., contends the trial court erred

_____

[1]See TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (WEST SUPP. 2012); *In re Merrill Lynch & Co., Inc.*, 315 S.W.3d 888, 891 n.3 (Tex. 2010).

by refusing to compel arbitration and stay the trial court proceedings.[2]  In support, Wells Fargo asserts Appellees, Anita Valero and Eva Shiells, Guardians of the Person and Estate of Abdenago Valero failed to establish (1) the Valeros' incapacity when the arbitration agreement was executed; (2) the parties' dispute falls within the "foreclosure action" exception in the arbitration clause; and (3) Wells Fargo waived its right to arbitration.  Because we find that the parties' dispute falls within an exception to their agreement to arbitrate, we affirm the trial court's denial of the motion to compel arbitration.

**Background**

In July 2010, Wells Fargo filed its *Original Petition* to collect a mortgage debt owed by Abdenago and Anita Valero and enforce its security interest in the Valeros' residence.  Because Abdenago's estate was [when] placed in guardianship, Wells Fargo sought to obtain a judgment against his estate.  *See* TEX. PROB. CODE ANN. §§ 800, 801, 804, 817, 832-34 (WEST 2003); TEX. PROP. CODE ANN. 51.002 (WEST 2012).  In its *Original Petition,* Wells Fargo sought an order authorizing a public sale of the residence.  The Guardians filed an answer and counterclaimed against Wells Fargo seeking actual and exemplary damages for alleged exploitation and abuse of the elderly as well as predatory lending practices.

In September 2011, Wells Fargo filed its *Motion to Compel Arbitration* premised on an arbitration clause that contains the following exclusion:

---

[2]*See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.098(a)(1), 171.025 (WEST 2011).

> If your loan is made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution, *our sole remedy is to initiate judicial foreclosure and any claims or defenses asserted in the foreclosure action will not be subject to arbitration.* However, if you initiate a separate lawsuit against us, we may elect to submit such claim(s) to arbitration.

(Emphasis added.)

Throughout its *Motion to Compel,* Wells Fargo referred to its *Original Petition* as an action to "foreclose" on the residence via a "judicial foreclosure." Wells Fargo also represented the Valeros' loan "was a home equity loan pursuant to Section 50(a)(6), Article XVI of the Texas Constitution, which requires judicial foreclosure."

In April 2012, the trial court held a hearing and subsequently issued an order denying Wells Fargo's motion. This appeal followed. We address Wells Fargo's second issue first because we find it dispositive.

### STANDARD OF REVIEW

In an accelerated appeal of an interlocutory order denying a motion to compel arbitration, we apply an abuse of discretion standard of review. *See Carr v. Main Carr Development, LLC,* 337 S.W.3d 489, 494 (Tex.App.—Dallas 2011, pet. denied) (citing *Sidley Austin Brown & Wood, LLP v. J.A. Green Development Corp.,* 327 S.W.3d 859, 862-63 (Tex.App.—Dallas 2010, no pet.)). Under this standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review its legal determinations *de novo. Id.* Whether an arbitration agreement is enforceable is subject to *de novo* review. *Carr,* 337 S.W.3d at 494 (citing *In re Labatt Food Service, L.P.,* 279 S.W.3d 640, 643 (Tex. 2009)). *See Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd.,* 60 S.W.3d 351, 352-53 (Tex.App.—Houston [1st Dist.] 2001, no pet.) (*de*

3

*novo* review is appropriate when the legal interpretation of an arbitration clause is at issue).

Disputes regarding the interpretation of an arbitration agreement are governed by traditional principles of contract construction. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227-28 (Tex. 2003) (collected cases cited therein). We examine the plain language of the arbitration clause in context and give the language its plain grammatical meaning in order to ascertain the intent of the parties. *Wachovia Securities, LLC v. Mims,* 312 S.W.3d 243, 247 (Tex.App.—Dallas 2010, no pet.) (citing *Jenkins & Gilchrist v. Riggs,* 87 S.W.3d 198, 201 (Tex.App.—Dallas 2002, no pet.)). Although the language of the agreement must clearly indicate an intent to arbitrate; *Aldridge v. Thrift Financial Marketing, LLC,* 376 S.W.3d 877, 882 (Tex.App.—Fort Worth 2012, no pet.), courts must resolve any doubts about the scope of an arbitration agreement in favor of arbitration because there is a presumption favoring such agreements. *Ellis v. Ron,* 337 S.W.3d 860, 861-62 (Tex. 2011); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737-38 (Tex. 2005). However, although arbitration should not be denied unless it can be said with "positive assurance" that the arbitration clause cannot be interpreted so as to encompass the dispute in question; *In re Dillard Dep't Stores, Inc.,* 186 S.W.3d 514, 516 (Tex. 2006) (*per curiam*), the strong policy favoring arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of unambiguous meaning of the arbitration clause. *See Osornia v. AmeriMex Motor & Controls, Inc.,* 367 S.W.3d 707, 712 (Tex.App.—Houston [14th Dist.] 2012, no pet.); *IKON Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 697 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

4

**MOTION TO COMPEL**

When considering a motion to compel arbitration, a court must determine (1) whether a valid agreement exists, and (2) whether the disputed claim falls within the agreement's scope. *In re Rubiola,* 334 S.W.3d 220, 223 (Tex. 2011) (original proceeding). The parties do not dispute whether their arbitration agreement is valid. Thus, we are constrained to consider whether the agreement encompasses Wells Fargo's cause of action. *Hawthorne Townhomes, L.P. v. Branch*, 282 S.W.3d 131, 139 (Tex.App.—Dallas 2009, no pet.) (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding)).

Wells Fargo does not dispute whether the Valeros' home equity loan was made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution. Accordingly, if Wells Fargo's action is a "foreclosure action," "any claims or defenses asserted . . . will not be subject to arbitration." The term "foreclosure" used either in its common usage; *Webster's Third New International Dictionary* 888 (4th Ed. 1976) ("a legal proceeding that bars or extinguishes a mortgagor's right of redeeming a mortgaged estate"), or its legal usage; *Black's Law Dictionary* 674 (8th Ed. 2004) ("a legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or force a sale in order to satisfy the unpaid debt secured by the property"), accurately describes Wells Fargo's suit against the Guardians. *See Pratt-Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 833 (Tex.App.—Dallas 2003, pet. denied) (if a term in an arbitration agreement is undefined, courts may resort to external references such as dictionaries for the term's meaning). Moreover, the term "claims" is unqualified and commonly understood to mean "an authoritative or challenging request" or "a

5

demand of a right or supposed right." *Webster's Third New International Dictionary* 414 (4th Ed. 1976). Like Wells Fargo's pleadings before the trial court, we also interpret its action as a "foreclosure action" and are "positively assured" the agreement's exclusion clause applies to Wells Fargo's and the Guardians' claims or defenses asserted here.

Wells Fargo contends that establishing a claim under section 799 of the Texas Probate Code is a proceeding separate and distinct from a "foreclosure" or sale under section 800. *See* TEX. PROB. CODE ANN. §§ 799, 800 (WEST 2003). This hyper-technical division of *a* "proceeding" under the Probate Code amounts to hair-splitting. The relevant provisions are all part of the "Claims Procedures," Subpart G of the Probate Code. Section 817 provides that, after a creditor's claim is approved, the creditor may apply for an order that the property be sold. *See id.* at § 817. No additional "proceeding" is described or required. Further, the term "foreclosure action" in the arbitration agreement's exclusionary clause is unqualified and both the common and legal definitions of "foreclosure" describe Wells Fargo's suit regardless of how one may parse the Probate Code's claims procedure. Even though the Probate Code requires an intermediate procedural step of obtaining a final and appealable order establishing Wells Fargo's claim, this is still a "foreclosure action" because the ultimate relief sought is the enforcement of that claim via the forced sale of the residence in question.

Accordingly, we find the trial court did not abuse its discretion by denying Wells Fargo's *Motion To Compel* and overrule Well Fargo's second issue. Our ruling pretermits Wells Fargo's remaining issues. *See* TEX. R. APP. P. 47.1.

6

**CONCLUSION**

The trial court's order is affirmed.

Patrick A. Pirtle
Justice