**Opinion issued April 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00383-CV

———————————

**DELIRIUM TV, LLC, Appellant**

**V.**

**TRAN DANG, Appellee**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-50674**

## O P I N I O N

Appellant Delirium TV, LLC (Delirium) takes this interlocutory appeal from

the trial court's denial of its motion to compel arbitration. *See* TEX. CIV. PRAC. &

REM. CODE § 171.098(a)(1) (authorizing this interlocutory appeal). In five issues,

Delirium asks us to consider whether (1) appellee Tran Dang properly invoked the

protections of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021[1] (EFAA or the Act), (2) Dang's initiation of separate arbitration proceedings constitutes an election to arbitrate under the EFAA, (3) Dang can maintain a "parallel" lawsuit in Texas along with arbitration proceedings in California, (4) the trial court abused its discretion in refusing to stay the state court litigation in light of Dang's pending arbitration claims, and (5) the trial court abused its discretion in denying Delirium's motion to compel arbitration and motion to stay. We affirm.

## Background

In January 2022, Dang was contacted on social media by a casting director with Kinetic Content, LLC (Kinetic), who identified Kinetic as the producer of the reality television program *Love Is Blind*. Dang contends that following several interviews, she was hired by Delirium and Kinetic for the fifth season of *Love is Blind* on or about April 17, 2022. According to Dang, filming took place from April 18, 2022 to May 14, 2022.

As part of the casting process, on February 7, 2022, Dang executed a "Participant Release Agreement" (the Agreement) with Delirium. The Agreement identified Dang as a "participant" in "*LOVE IS BLIND – SEASON 5*" (the Program)

---

[1] Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401–02).

and named Delirium as the Program's producer. The Agreement also contained an arbitration provision, which provided, in relevant part:

68. Both Producer, on behalf of itself and Network, and I acknowledge, understand and agree that if any dispute, controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or any effort by any party to enforce, interpret and/or construe, rescind, terminate or annul this Agreement, or any provision thereof, including without limitation the applicability of this arbitration provision, and any and all disputes or controversies relating in any manner to my appearance on or participation in and in connection with the Program that are not otherwise barred or released pursuant to the terms of this Agreement (collectively "Matters") cannot be resolved through direct discussions, the parties agree to endeavor first to resolve the Matters by mediation conducted in the County of Los Angeles and administered by JAMS. (Notwithstanding the foregoing, if any party files suit in court, the other party or parties need not demand mediation to enforce the right to compel arbitration.) If any Matter is not otherwise resolved through direct discussions or mediation, as set forth above, then the parties agree that it shall be resolved by binding arbitration conducted in accordance with the Streamlined Arbitration Rules and Procedures of JAMS, through its Los Angeles, California office or its Houston, Texas office, as Producer may elect.

69. In agreeing to arbitration, the parties acknowledge that we have waived the right to a jury trial.

In August 2022, Dang sued fellow participant Thomas Smith, Kinetic, and Delirium, alleging that Smith sexually assaulted Dang during filming. Dang further contended that Kinetic and Delirium, as entities involved in the development and production of the series and the employers of Dang and Smith, were liable under theories of respondeat superior and vicarious liability. In addition to her claims for

3

civil assault, Dang also asserted causes of action for false imprisonment and negligence against Kinetic and Delirium.

In November 2022, Delirium filed a motion to compel mediation and motion to compel arbitration with its original answer. In the arbitration motion, Delirium argued that it (1) had a valid arbitration agreement with Dang, and (2) Dang's claims were within the arbitration provision's broad scope. In a footnote, Delirium summarily contended that the provisions of the EFAA were inapplicable to Dang's suit, but if they did apply, the trial court should abate the nonarbitrable claims pending resolution of the arbitrable ones.

Dang opposed the motion to compel arbitration, arguing that her state law tort claims were exempted from arbitration under the EFAA. Dang argued that her wage claims, which were at the time the subject of a separate arbitration proceeding, were separate and distinct from her tort claims. Dang further contended that her tort claims (assault, negligence, and false imprisonment) all arose from the assault allegedly perpetrated by Smith and "ignore[d], minimize[d], and exploit[ed]" by Kinetic and Delirium.

On February 1, 2023, Dang made a demand for arbitration to JAMS, "alleg[ing] causes of action against [Delirium] and [Kinetic] for damages resulting from [their] evading the mandatory minimum wage and overtime provisions of the

Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ('FLSA')."[2] Dang alleged that Delirium and Kinetic owed her wages and overtime for her time spent on call while filming *Love is Blind*. Dang contended that she was "willfully detained on non-discretionary call 24 hours a day during filming and production of *Love is Blind* under [Delirium and Kinetic]."

Following Dang's arbitration demand, Delirium filed a "Supplement to its Motion to Compel Arbitration and Brief in Support," arguing that because Dang's arbitration demand "allege[d] identical operative facts as those asserted in [her] lawsuit" and because her lawsuit's allegations "touch[ed] matters covered by the parties' arbitration agreement, all of [Dang's] claims must also be arbitrated regardless of the causes of action alleged." Delirium further argued that even if some of Dang's claims were not subject to arbitration, the trial court must nevertheless stay all proceedings pending the resolution of the arbitration.

On May 10, 2023, the trial court signed an order summarily denying Delirium's motion to compel arbitration without stating the basis for the denial. This appeal followed.

---

[2] Before making a demand in arbitration, Dang initiated a claim with the Texas Workforce Commission (TWC) for her alleged unpaid wages. However, TWC determined that it was preempted from ruling on the dispute because it was subject to a valid arbitration agreement.

**Applicability of the EFAA to Dang's Claims**

In five issues, Delirium contends that the trial court erred in denying its motion to compel arbitration. We first consider the application of the EFAA to Dang's claims. The question of whether the parties' arbitration agreement is enforceable as to Dang's assault claims appears to involve an issue of first impression for any court—the interpretation of the term "sexual assault dispute" as defined in the EFAA.

**A.      The FAA and the EFAA**

Courts have consistently recognized a "national policy favoring arbitration." *See, e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting 9 U.S.C. § 2); *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 854 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Nevertheless, "the FAA's[3] mandates in support of its 'liberal federal policy favoring arbitration agreements' may be 'overridden by a contrary congressional command.'" *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. 2023) (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). Recently, Congress created an exemption from arbitration for sexual assault and sexual harassment claims by enacting the EFAA. The EFAA provides that:

> Notwithstanding any other provision of this title, at the election of the
> person alleging conduct constituting a sexual harassment dispute or

---

3      Federal Arbitration Act, 9 U.S.C. §§ 1–402.

sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA applies only to any dispute or claim that arises or accrues on or after the date of the enactment of the EFAA and does not have retroactive effect. *Johnson*, 657 F. Supp. 3d at 550 (citing Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022)). The EFAA was enacted on March 3, 2022. *Id.* Under the EFAA, a "sexual assault dispute" refers to "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." 9 U.S.C. § 401(3). Whether the EFAA applies to a dispute is a question for the courts, rather than an arbitrator. *Id.* § 402(b).

**B.     Standard of Review**

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 676 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We defer to the trial court's factual determinations if they are supported by the evidence, but we

7

review the court's legal rulings de novo. *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Skufca*, 650 S.W.3d at 676.

## C.      The Parties' Burdens

A party seeking to compel arbitration under the FAA must establish: (1) the existence of a valid, enforceable arbitration agreement; and (2) that the claims at issue fall within the agreement's scope.[4] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). Once the questions of validity and scope are resolved affirmatively, the court considers whether any federal statute or policy "renders the claims nonarbitrable." *Mendez v. New Bell Gen. Servs., L.P.*, 727 F. Supp. 2d 585, 589 (W.D. Tex. 2010) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). "The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity," as well as other defenses to arbitration such as unconscionability, fraud, duress, or waiver. *Gonzales v. Brand Energy & Infrastructure Servs., Inc.*, No. H-12-1718, 2013 WL 1188136, at \*2 (S.D. Tex. Mar. 20, 2013) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding), *abrogated on other grounds*, *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding).

---

[4]      On appeal, the parties do not contest the applicability of the FAA.

**D. Analysis**

On appeal, the parties do not challenge the validity of the arbitration provision within the Agreement, nor do they argue that the claims at issue do not fall within the arbitration provision's scope. Rather, Delirium contends that the trial court erred in applying the EFAA to exempt Dang's claims from arbitration.[5] Specifically, Delirium argues that because Dang did not plead a plausible claim for sexual assault (against either Smith or Delirium), the EFAA does not apply to her claims against Delirium.

We begin by reviewing the relevant facts asserted in Dang's complaint. Under the heading titled "Defendant Thomas Smith," Dang outlines the following:

> 32. On or around May 3, 2022, while *Love is Blind* was being filmed, Smith sexually assaulted [Dang] throughout the night. Amongst other acts—and certainly by no means is the forthcoming list exhausting—Smith forcefully and without [Dang's] consent:
>
> a. Incessantly groped [Dang];
>
> b. Exposed himself in the nude to [Dang] without consent; and

---

[5] Although the trial court's order denying the motion to compel arbitration did not state the basis for its decision, this was the only argument raised by Dang in her opposition to the motion to compel arbitration. Therefore, this is the only ground before us in reviewing the trial court's denial of the motion. *See Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 390 (Tex. App.— Houston [14th Dist.] 1993, writ denied) (noting that if trial court does not make findings of fact or conclusions of law, then appellate court must affirm judgment if there is evidence to support it on any legal theory raised by prevailing party, but because nonmovant did not raise unconscionability as defense to arbitration, it could not have been relied upon by trial court in denying motion to compel arbitration).

9

c. Forcibly and repeatedly made sexual contact with [Dang] without her consent and over her express objections.

33. Due to Delirium TV and Kinetic Content's 24-hour surveillance of [Dang] and Defendant Smith, most if not all of these traumatic acts were filmed by the production crew and within their knowledge.

34. [Dang] reported Smith's conduct to Delirium TV and Kinetic Content producers the next morning following her assault. [Dang] detailed the assault and reported that she was uncomfortable being around Smith.

35. Delirium TV and Kinetic Content producers made attempts to mask [Dang's] sexual assault by characterizing it as a lack of attraction on the part of [Dang]. When [Dang] insisted an assault took place, Defendants Delirium TV and Kinetic Content questioned whether the problem was really one of communication and swept aside her concerns. Upon information and belief, Defendants took no corrective action. Delirium TV and Kinetic Content ratified and condoned the mistreatment for the sake of reality television.

Later, Dang's complaint asserts the following under her cause of action styled

"Assault (Battery) – Bodily Injury and Offensive Contact":

41. [Dang] incorporates by reference, as if fully set forth herein, the statutory language of Texas Penal Code §§ 22.01, 22.011 describing the felonies of "Assault" and "Sexual Assault." [Dang] alleges that she was the victim of the aforementioned crimes that Defendant Smith committed against [Dang] on or about May 3, 2022 and that said crimes have caused [Dang's] damages alleged in this Petition.

42. On or about May 3 and May 4, 2022, Defendant Smith intentionally, knowingly, or recklessly made physical contact with [Dang's] person causing bodily injury—that is, physical pain, illness, or impairments of [Dang's] physical condition—and [Dang] did not, and could not, consent to the harmful physical contact.

10

43. Alternatively, Defendant Smith intentionally or knowingly caused to be made physical contact with [Dang] when Defendant knew, or reasonably should have believed, that [Dang] would regard the contact as offensive and provocative. Indeed, said physical contact was offensive, provocative, and committed by Smith despite never having consent from [Dang].

. . . .

45. Defendants Delirium TV and Kinetic Content are liable for the crimes, assault, battery, and sexual assault of which [Dang] is a victim because they participated in the tortious and felonious acts directly themselves through the actions of their vice-principal.

46. Defendant Smith was acting under the supervision of Defendants Delirium TV and Kinetic Content when these unlawful, offensive, and provocative acts occurred.

47. Accordingly, Delirium TV and Kinetic Content are responsible for Defendant Smith's conduct under the doctrines of respondeat superior and vicarious liability. Bodily injury and offensive contact to [Dang] were direct and proximate causes of [Dang's] severe mental anguish, pain, and emotional distress, for which each and every Defendant is liable.

As noted above, the EFAA defines a "sexual assault dispute" as one involving a "nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18[6] or similar applicable Tribal or State law, including when the victim

---

6       18 U.S.C. § 2246 includes the following definitions:

(2) the term "sexual act" means–

   (A)    contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

11

lacks the capacity to consent." 9 U.S.C. § 401(3). Here, Dang has plainly alleged that Smith sexually assaulted her and made sexual contact with her without her consent. Dang specifically asserts, in the context of her assault allegation, that Smith "[i]ncessantly groped" her and "[f]orcibly and repeatedly made sexual contact" with her "without her consent and over her express objections." Further, Dang's complaint specifically references "the statutory language of Texas Penal Code §§ 22.01, 22.011" (assault and sexual assault).[7] Dang alleged that she was the victim

---

(B)     contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C)     the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D)     the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246.

[7]     Under Texas Penal Code section 22.011(a)(1), a person commits the offense of sexual assault if the person intentionally or knowingly:

(A)     causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;

12

of these specifically enumerated offenses, and that Smith committed these offenses against her on or about May 3, 2022.

Delirium seems to argue that because Dang did not specify what body parts were involved in the alleged assault, Dang cannot invoke the provisions of the EFAA. Delirium cites no case law to support this contention. Rather, Delirium focuses on a decision from a New York federal district court, which interpreted the meaning of "sexual harassment dispute" as defined by the EFAA. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023). The *Yost* court held that the plaintiff must plausibly plead a claim for sexual harassment before the EFAA can be applied to bar arbitration of the claim. *Id.* at 580–82. Ultimately, the court determined that the plaintiff's pleadings fell short, because her allegations did not demonstrate that the defendant's offending conduct was keyed to a protected characteristic of the plaintiff under the New York City Human Rights Law. *Id.* at 580. However, the *Yost* court specifically limited its holding to the construction of the term "sexual harassment dispute" in the EFAA. *See id.* at 584 n.14 (noting that

---

(B)     causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

(C)     causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor[.]

Tex. Penal Code § 22.011(a)(1).

although EFAA "also applies to 'sexual assault dispute[s],'" court's "discussion as to the EFAA's proper construction [was] framed solely in terms of 'sexual harassment dispute[s]'" because plaintiff did not allege sexual assault). While illustrative, the *Yost* court's discussion does not guide our analysis of the term "sexual assault dispute."

We note that the EFAA's definition of "sexual harassment dispute" includes additional terms not found in the definition of "sexual assault dispute." For example, a "sexual harassment dispute" is one "*relating to* conduct that is *alleged to* constitute sexual harassment" under applicable laws. *See* 9 U.S.C. § 401(4) (emphasis added). By contrast, a "sexual assault dispute" is a "dispute involving a nonconsensual sexual act or sexual contact" as those terms are defined under relevant laws. *Id.* § 401(3). The *Yost* court focused on the word "alleged" in the definition of "sexual harassment dispute," noting that "the term adds a legal dimension to the required allegation." *Yost*, 657 F. Supp. 3d at 584–85. Congress could have similarly defined a "sexual assault dispute" to include this "relating to" or "alleged to" language, but it did not. As the *Yost* court observed, "Congress's decision to add those qualifying words is significant." *Id.* at 585 (citing *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021)).

Delirium essentially asks us to require that Dang establish Smith's criminal liability before her claims can be exempted from arbitration pursuant to the EFAA.

But that is not what the Act requires. Dang has pleaded that Smith "[i]ncessantly groped" her and "forcibly and repeatedly made sexual contact" with her "without her consent and over her express objections." Looking to the definitions in section 2246 (referenced in the EFAA's definition of "sexual assault dispute"), Dang's allegations, if true, would constitute "sexual contact" as defined by the statute, so long as Smith touched Dang's "genitalia, anus, groin, breast, inner thigh, or buttocks" with the requisite intent. *See* 18 U.S.C. § 2246(3).

Considering Dang's use of the words "incessantly," "groped," and "sexual contact," along with her references to the section of the Texas Penal Code pertaining to sexual assault and repeated assertions that Smith's conduct was nonconsensual, we hold that her complaint pertains to a "sexual assault dispute" as defined by the EFAA, and that the EFAA therefore invalidates the arbitration provision at issue. *See United States v. Price*, 980 F.3d 1211, 1242 n.5 (9th Cir. 2019) (order) (Wardlaw, J., concurring) (noting that in context of section 2246, "[t]he term 'sexual contact' is defined as 'intentional' touching, i.e., groping"); *Blatt v. Pambakian*, No. 20-55084, 2021 WL 4352329, at *1 (9th Cir. Sept. 24, 2021) (citing dictionary definitions and noting that "average reader would understand 'groped and sexually harassed' [as used in news article made the basis of anti-SLAPP motion] to mean, at a minimum, that [defendant] touched [plaintiff] against her will for his sexual

pleasure and engaged in some sort of additional, uninvited sexual behavior—verbal, physical, or both").

We further reject any argument by Delirium that the EFAA does not apply to Dang's claims against Delirium because Smith, not Delirium, assaulted Dang, and Delirium is not liable for Smith's actions. Delirium focuses on whether an employment relationship between the parties existed, or whether Delirium owed a duty to Dang at all. Delirium's arguments in this regard ignore the plain language of the EFAA, which states that:

> [A]t the election of the person alleging conduct constituting a . . . sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute[.]

9 U.S.C. § 402(a). Nothing in this language requires a certain relationship to exist between the parties before the arbitration agreement is invalidated by the EFAA. Nor does the Act specify anything about how the assault must have occurred, or who perpetrated the assault. *See Famuyide v. Chipotle Mexican Grill, Inc.*, No. 23-1127, 2023 WL 5651915, at *1, *4 (D. Minn. Aug. 31, 2023) (denying Chipotle's motion to compel arbitration of employee's suit pursuant to EFAA; allegations related to Chipotle's handling of employee's reports of sexual assault and sexual harassment perpetrated by coworker).[8] Rather, the EFAA requires (1) "alleg[ations of] conduct

---

[8]    We may rely on federal decisions and decisions from other states as persuasive authority. *See Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 718 (Tex. App.—Fort

constituting a . . . sexual assault dispute," and (2) "a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute." 9 U.S.C. § 402(a). If those requirements are met, then "no predispute arbitration agreement . . . shall be valid or enforceable with respect to [such] a case." *Id.*

Further, the question of whether Delirium is ultimately liable for Smith's alleged conduct is not the proper inquiry in our review of the trial court's denial of Delirium's motion to compel arbitration. We are concerned with the arbitrability of Dang's claims, not their merits. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) ("When conducting this two-pronged [arbitrability] analysis, courts must not consider the merits of the underlying action"). As a result, beyond addressing whether Dang has sufficiently invoked the EFAA, we do not consider Delirium's arguments relating to Dang's failure to state a claim against Delirium.[9]

---

Worth 2013, no pet.); *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 435 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

[9] For example, Delirium contends that Dang only makes "[g]lobal allegations . . . against multiple defendants" and "fail[ed] to allege specific acts of misconduct by Delirium." These questions are beyond the scope of our analysis.

Having determined that Dang's claims against Delirium are exempted from arbitration by the EFAA, we overrule Delirium's first issue.[10]

**Election of Arbitration**

In its second and third issues, Delirium contends that the trial court erred in denying its motion to compel arbitration because Dang made an election to pursue certain claims in arbitration. As outlined above, after filing her lawsuit against Smith, Kinetic, and Delirium, Dang made a demand in arbitration for unpaid wages from Delirium and Kinetic pursuant to the FLSA. Delirium argues that regardless of the EFAA's application to Dang's claims, she is estopped from or has waived her right to contest arbitration of the instant suit because she has initiated a separate arbitration proceeding against Delirium.

**A.     Dang's Lawsuit Predated her Arbitration Demand**

As a threshold matter, we reject any effort by Delirium to reframe the timeline of events as it pertains to Dang's filing of her lawsuit and demand for arbitration. Dang first filed suit alleging tort claims against Smith, Delirium, and Kinetic. Months later, she made a demand in arbitration against Delirium and Kinetic for unpaid wages and overtime. Thus, she did not make any "election" to pursue

---

[10]     Delirium argued to the trial court that even if the EFAA applied to Dang's civil assault claims, the negligence and false imprisonment claims were nevertheless subject to being compelled to arbitration. Delirium appears to have abandoned this argument on appeal.

18

arbitration prior to the filing of her lawsuit. Rather, as the EFAA permits, Dang elected to seek resolution of her tort claims relating to the sexual assault dispute in litigation. *See* 9 U.S.C. § 402(a) (stating that predispute arbitration agreements are not valid or enforceable with respect to lawsuits relating to sexual assault disputes "at the election of the person alleging conduct constituting . . . a sexual assault dispute"). Only after those tort claims were pending in litigation did Dang initiate a separate arbitration proceeding concerning her federal law wage claims.

**B.      Dang's Wage Claims are Unrelated to her Tort Claims**

The case of *Mera v. SA Hospitality Group, LLC*, cited by Delirium, actually supports separation of Dang's wage claims from her tort claims, contrary to Delirium's arguments. *See* 675 F. Supp. 3d 442 (S.D.N.Y. 2023). In that case, an employee filed suit against his former employer, asserting FLSA wage claims and violations of New York state labor and human rights laws arising from allegedly unpaid wages and a hostile work environment created by sexual orientation discrimination. *Id.* at 444. The employer moved to compel the entire case to arbitration pursuant to an agreement between the parties. *Id.*

After determining that the employee had pleaded a sexual harassment dispute within the scope of the EFAA, the district court then concluded that the parties' arbitration agreement was unenforceable only as applied to the employee's claims made pursuant to New York state human rights laws. *Id.* at 446–48. The court found

19

that because the employee's "wage and hour claims under the FLSA and the [New York Labor Law] [did] not relate in any way to the sexual harassment dispute, they must be arbitrated, as the [parties' agreement] requires." *Id.* at 448. However, the *Mera* court ruled that the employee was not required to arbitrate his state law human rights claims, because those did relate to the sexual harassment dispute. *Id.*; *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (per curiam) (determining that "when a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums" (internal quotations omitted)); *Sabatelli v. Baylor Scott & White Health*, 832 Fed. Appx. 843, 847 (5th Cir. 2020) (noting that "when some claims are arbitrable and others are not, it is not unusual to have separate litigation before an arbitrator and a judge"). The *Mera* court then stayed proceedings as to the FLSA and state labor law claims only—it did not stay the claims related to the sexual harassment dispute. *Mera*, 675 F. Supp. 3d at 448.

C.     **Other Cases Cited by Delirium are Distinguishable**

Delirium cites two other cases to support its argument that Dang must arbitrate her tort claims because she elected to arbitrate her wage claims. Both cases are factually distinguishable. For example, the case of *Nghiem v. NEC Electronic, Inc.*,

20

25 F.3d 1437 (9th Cir. 1994) concerned an employee who first initiated arbitration against his former employer, and while arbitration was pending, filed a lawsuit in state court on "substantially the same issues." *Id.* at 1439. Ultimately, the arbitrator rendered a decision in favor of the employer. *Id.* The trial court granted the employer's motion to confirm the arbitration award and dismissed the employee's suit in its entirety. *Id.* On appeal, the Ninth Circuit Court of Appeals affirmed, noting that "[o]nce a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority [of the arbitrator]." *Id.* at 1440. Relying on United States Supreme Court precedent, the court determined that the employee's election of arbitration amounted to a waiver of any objection he had to arbitration. *Id.*

Similarly, in *Mays v. Lanier Worldwide, Inc.*, an Alabama federal district court held that the plaintiff had waived any right to object to the jurisdiction of the arbitrator where he previously "voluntarily initiated binding arbitration" and "active[ly] participat[ed] in the full arbitration proceedings." 115 F. Supp. 2d 1330, 1342 (M.D. Ala. 2000).

Both of these cases relied upon by Delirium are factually distinguishable from the present case because, here, Dang did not file suit after obtaining an unfavorable result in arbitration. Unlike the plaintiffs in both *Nghiem* and *Mays*, Dang first filed suit in state court concerning her tort claims, and then initiated arbitration against

21

Delirium for her federal wage claims. These are two distinct proceedings concerning different claims, although both are brought against Delirium.

We disagree with Delirium's contention that "the key issues in both proceedings revolve around the allegation that [Dang] was falsely imprisoned as a result of her alleged employment." Although Dang does allege certain identical facts in both proceedings, the "key issue" in Dang's lawsuit is the alleged sexual assault,[11] while the focus of her arbitration demand is Delirium's alleged failure to adequately compensate her for her time spent on call during the filming and production of *Love is Blind*. Dang's arbitration demand does not mention Smith or the assault. Because these are separate and distinct proceedings, with different factual allegations and claims, the trial court correctly denied Delirium's motion to compel Dang's tort claims to arbitration with her federal wage claims. *See, e.g.*, *KPMG*, 565 U.S. at 22 (contemplating "separate proceedings in different forums" if not all of plaintiff's claims are subject to arbitration); *Mera*, 675 F. Supp. 3d at 448 (ordering arbitration of wage claims but denying motion to compel arbitration of sexual harassment claims, pursuant to EFAA).

We overrule Delirium's second and third issues.

---

[11] As Delirium acknowledges elsewhere in its briefing, Dang argued in response to Delirium's motion to compel arbitration that "each and every claim alleged in this lawsuit is predicated on allegations that a sexual assault occurred while [Dang] was working for [Kinetic and Delirium] and while they were orchestrating the situation that enabled the assault."

## Stay of Proceedings

Lastly, Delirium argues that the trial court erred in denying its motion to stay the litigation proceedings pending the outcome of the FLSA arbitration. We review a trial court's order on a motion to stay arbitration for an abuse of discretion. *Prestonwood Tradition, LP v. Jennings*, 653 S.W.3d 436, 441 (Tex. App.—Dallas 2022, no pet.) (citing *Henry*, 551 S.W.3d at 115).

### A. No Mandatory Stay

Delirium first contends that, pursuant to Section 3 of the FAA, a stay of Dang's lawsuit was mandatory. Section 3 provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding) (noting that FAA "require[s] courts to stay litigation of *issues that are subject to arbitration*") (emphasis added). We have already determined that the claims presented in Dang's lawsuit are not subject to arbitration, given the applicability of the EFAA. Further, it does not appear, at least at this early stage in the litigation, that the state law tort claims at issue in this litigation and the

23

federal wage claims pending in arbitration are so closely related that proceeding with the lawsuit would be detrimental to the arbitration.[12] The *Mera* case is again instructive here. After determining that the EFAA only rendered the arbitration agreement unenforceable as to the claims made pursuant to New York state human rights laws, it ordered a stay of the litigation as to the wage-and-hour claims only, which were being compelled to arbitration—it did not stay the claims relating to the sexual harassment dispute. 675 F. Supp. 3d at 448.

Delirium attempts to distinguish *Mera*, arguing that the court there did not stay the human rights law claims because "those claims were entirely unrelated" to the plaintiff's wage dispute. Delirium contends that unlike the claims in *Mera*, Dang's claims have "overlapp[ing] factual contentions" and similarly concern "issues such as her alleged working conditions, employment status and false imprisonment." Dang's arbitrable and nonarbitrable claims may be more closely related than those in *Mera*, particularly with respect to her false imprisonment and negligence claims. Questions concerning Dang's employment status may arise in

---

[12] *See AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001) (remanding case to trial court for consideration of discretionary stay, noting that issues such as "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays" are "properly committed in the first instance to the [trial] court's discretion" and must be weighed in determining whether to order stay and parameters of such stay); *Courtland Bldg. Co. v. Jalal Fam. P'ship, Ltd*, 403 S.W.3d 265, 276 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (remanding case to trial court for consideration of whether litigation of claims not ordered to arbitration should be stayed).

both the wage-and-hour arbitration and the trial court's resolution of the false imprisonment or negligence claims. But the crux of Dang's lawsuit concerns the assault allegedly perpetrated by Smith, and whether the environment created by Delirium and Kinetic allowed that assault to happen. And whether Delirium or Kinetic owed some duty to Dang to protect her from Smith turns on Smith's relationship with the corporate defendants, not Dang's, at least with respect to her vicarious liability claims. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (noting that "[g]enerally in Texas, the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent"); *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 138 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that "[v]icarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two").

This is not a situation where "litigation must be abated to ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation." *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 195–96 (granting mandamus in response to trial court's failure to stay litigation between plaintiff and Merrill Lynch affiliate entities while arbitration between plaintiff and Merrill Lynch proceeded; the court assumed for purposes of its decision that same issues were to be decided in both proceedings). Rather, in this case, Dang agreed to arbitrate her

wage dispute, but she did not assert any wage-related claims in her lawsuit. *See Courtland Bldg. Co. v. Jalal Fam. P'ship, Ltd.*, 403 S.W.3d 265, 276 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("To determine whether litigation of the [nonarbitrable] claims should be stayed, it is necessary to know whether litigation of those claims would undermine issues to be resolved in arbitration, or whether the arbitration would resolve matters that are material to the litigation of those issues.").

## B.    Dang's Interest in Litigating Her Claims

We must also consider Congress's intentional carve-out of sexual assault disputes from arbitration through the EFAA in assessing whether Dang's lawsuit asserting such a claim should be stayed pending resolution of a separate arbitration proceeding. Though it does not appear that any court has addressed this exact issue,[13]

---

[13]    The case of *In re Merrill Lynch & Co., Inc.*, 315 S.W.3d 888 (Tex. 2010) (orig. proceeding) (per curiam), though similar, is distinguishable. There, the Texas Supreme Court addressed the trial court's discretion to stay one MetroPCS subsidiary's (Communications) litigated claims against Merrill Lynch while compelling arbitration of identical claims against Merrill Lynch brought by a different subsidiary (Wireless). *Id.* at 889. Communications's agreement with Merrill Lynch did not contain an arbitration clause, but Wireless's agreement did. *Id.* at 889–90. The court held that Communications's claims should be stayed because failure to do so "would create duplicative litigation" and "could moot the contemplated arbitration between Wireless and Merrill Lynch, destroying [Merrill Lynch]'s bargained-for rights." *Id.* at 890–92.

We acknowledge the court's holding in *In re Merrill Lynch & Co.* but determine it is distinguishable from the present case for at least one important reason: the litigation and arbitration in that case admittedly concerned "identical claims with virtually identical facts." *Id.* at 889. Although the claims here may involve some related questions, they are not identical.

a Texas federal district court considered an analogous question in *Vuoncino v. Forterra, Inc.*, No. 21-cv-01046-K, 2022 WL 868274 (N.D. Tex. Feb. 28, 2022). *Vuoncino* concerned claims brought by a former employee for breach of contract, wrongful discharge, violations of a Florida whistleblower statute, and the whistleblower provision of the Sarbanes-Oxley Act (SOX). *Id.* at *2. The defendants moved to compel arbitration of all the employee's claims but his SOX claim, acknowledging that arbitration of that claim was prevented by the statute. *Id.*; *see also* 18 U.S.C. § 1514A(e)(2) (exempting all SOX whistleblower claims from "predispute arbitration agreement[s]"). After determining that the state law claims were subject to arbitration, the court ruled that those claims must be stayed, pursuant to the mandatory stay provisions of section 3 of the FAA. *See Vuoncino*, 2022 WL 868274, at *6; 9 U.S.C. § 3. However, the court did not order a stay as to the remaining, nonarbitrable SOX claim. *Vuoncino*, 2022 WL 868274, at *8.

First, the court considered cases within the Fifth Circuit that applied the test for a discretionary stay in non-signatory arbitration cases in different factual contexts.[14] *Id.* at *6. For example, the *Vuoncino* court noted that some federal district

---

[14]    Texas courts employ a similar test. *See, e.g.*, *In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (orig. proceeding) (stating that "a non-signatory party's claims may be subject to the mandatory stay [outlined in section 3 of the FAA] if the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration") (internal quotations omitted).

courts applied this test in cases where (as here) all defendants had an arbitration agreement with the plaintiff,[15] but some of the plaintiff's claims were nonarbitrable for procedural or policy reasons. *Id.* at *7 (citing *Kindred Hosps. Ltd. P'ship v. Cigna Health & Life Ins. Co.*, No. 17-CV-866-A, 2018 WL 10561987, at *1 (N.D. Tex. May 8, 2018) (staying claim that was "inherently inseparable from the claims the court . . . determined to be arbitrable"); *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 356 (S.D. Tex. 2008), *aff'd and remanded*, 583 F.3d 228 (5th Cir. 2009) ("In this case, the claims to be arbitrated and those to be litigated involve many of the same operative facts, and allowing the litigation of the nonarbitrable claims to proceed could have a significant impact on the arbitration. The Court therefore reluctantly concludes that it should stay litigation of Plaintiff's nonarbitrable claims during the pendency of the parties' arbitration.")).

However, the *Vuoncino* court concluded that this test did not necessarily support a stay of the plaintiff's SOX claim. *Id.* For example, the court pointed out that while some of the plaintiff's claims shared a "nucleus of operative facts" with the SOX claim, another claim had "no significant factual overlap" and was "easily separable" from the SOX claim. *Id.*

---

[15] Of course, Smith did not have an arbitration agreement with Dang, but he is not a party to this appeal.

After reviewing district court decisions from courts outside the Fifth Circuit considering the same question, some denying a stay of SOX claims and others granting one, the court identified "two competing interests": "the interest of a SOX plaintiff to have immediate access to a federal forum" as guaranteed by the statute; and "the interest of an arbitrating party in its right to a meaningful arbitration, as expressed by the Fifth Circuit and embodied in the FAA." *Id.* at *7–8 (internal quotations omitted). Ultimately, the court concluded that the plaintiff's "interest in having a direct path to a federal forum for his SOX claim outweigh[ed] Defendants' interest in enforcing its contractual right to arbitrate [the plaintiff's] other claims." *Id.* at *8.

The court emphasized SOX's "explicit carve-out of predispute arbitration agreements," which "evinced a clear intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (internal quotations omitted). Ultimately, the court concluded that a stay of the SOX claim would disregard this express congressional intention.[16] *Id.*

---

[16] In so holding, the *Vuoncino* court noted that although the defendants' contractual rights to arbitration were somewhat diminished by its decision, they were at least assured that their arbitrable claims would proceed to arbitration. *Id.* The court also pointed out that the defendants could still avail themselves of the opportunity to have a court resolve legal issues related to the SOX claim, such as any arguments that the claim failed as a matter of law. *Id.*

The *Vuoncino* court's reasoning applies to Congress's enactment of the EFAA and express carve-out of sexual assault disputes from arbitration. *See* 9 U.S.C. § 401. The stated purpose of the EFAA is to "empower sexual harassment [and sexual assault] claimants to pursue their claims in a judicial, rather than arbitral, forum." *Yost*, 657 F. Supp. 3d at 586 (citing H.R. Rep. No. 117-234, at 3–4 (2022)). We therefore hold that the trial court's denial of Delirium's motion to stay was not an abuse of its discretion, given this important consideration. *See Prestonwood Tradition*, 653 S.W.3d at 441; *see also In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 195 (noting trial court's "wide discretion" to say when party's "day in court" will be). We overrule Delirium's fourth and fifth issues.[17]

## Conclusion

Having overruled each of Delirium's issues, we affirm the trial court's order denying Delirium's motion to compel arbitration and motion to stay.

Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

---

[17] Our resolution of this issue does not prevent the trial court from revisiting the issue of a stay later in the litigation proceedings, should it determine in its discretion that one is warranted. *See Metro. Life Ins. Co. v. Lindsay*, 920 S.W.2d 720, 726 & n.7 (Tex. App.—Houston [1st Dist.] 1996, no writ) (reversing denial of motion to compel arbitration pursuant to FAA and stating that although record did not support appellant's contention that trial court also abused discretion by refusing to stay litigation among non-arbitrating parties pending outcome of arbitration, nothing in opinion prohibited trial court from reconsidering stay on remand).